Submitted May 18, 2021, affirmed April 27, petition for review denied
September 1, 2022 (370 Or 212)

SUSAN MONICA,
*Petitioner-Appellant,*

*v.*

Paula MYERS,
Superintendent,
Coffee Creek Correctional Facility,
*Defendant-Respondent.*

Washington County Circuit Court
18CV07502; A172244

510 P3d 238

In this appeal from denial of post-conviction relief, petitioner claims she received ineffective assistance of counsel during her criminal trial on two counts of murder, among other charges. Specifically, she claims that trial counsel was ineffective for failing to advance certain arguments related to a motion to suppress evidence discovered during the execution of a search warrant, failing to impeach a state's witness, failing to object to witness vouching, and failing to rebut certain evidence related to an alleged murder weapon. The post-conviction court denied her claims after concluding that the attorney performance was not unreasonable and not prejudicial. *Held*: Trial counsel reasonably chose to focus on whether a search warrant should have been issued at all, rather than whether the search warrant was too broad, and because officers found a human leg in plain view while searching the property, a different argument would have been unlikely to affect the outcome of the trial. Trial counsel's performance during the trial was reasonable and, in any event, even if it was deficient, petitioner's claims were related to issues unlikely to affect the outcome of the trial. The trial court did not err by concluding the trial counsel's performance was reasonable and that petitioner did not suffer prejudice as a result of attorney performance.

Affirmed.

Patricia A. Sullivan, Senior Judge.

Jedediah Peterson and O'Connor Weber, LLC, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Petitioner murdered two men and left their bodies in her pigpen to be eaten by her pigs. A jury found petitioner guilty of two counts of murder, two counts of abuse of a corpse in the first degree, and identity theft. In this post-conviction relief appeal, she assigns error to the post-conviction court's denial of the following claims: (1) trial counsel was ineffective for failing to make meritorious arguments in the motion to suppress evidence obtained via search warrant; (2) trial counsel was ineffective for failing to impeach a state's witness with their criminal record; (3) trial counsel was ineffective for failing to rebut evidence that petitioner used a shotgun to kill one of the victims; (4) trial counsel was ineffective for failing to object to witnesses remarking on her credibility during the trial; and (5) trial counsel's cumulative errors constituted ineffective assistance of counsel warranting reversal. For the reasons that follow, we affirm.

## I.   BACKGROUND

The underlying criminal charges arose under the following circumstances. In January 2014, the son of a man named Haney reported him missing in Jackson County. Haney had been residing on petitioner's property, and so his son visited petitioner to find his father's belongings. He found most of his father's belongings intact—including vehicles and other items—but could not find his wallet. Law enforcement visited the property to see Haney's camper, and as they were leaving the camper, they noticed large pigs in a pen. Petitioner spontaneously told law enforcement that she was "in the process of trying to get a government grant for research with the pigs on how they consume human bodies." Law enforcement returned to the property a few days later and recorded the conversation they had with petitioner. During that exchange, petitioner stated that Haney "got all crazy" and destroyed a room on the property the last time she saw him. Law enforcement asked if they could look around the property, which prompted petitioner to joke about the officers needing a warrant. She then spontaneously stated, "I've threat - threatened to kill everybody and feed them to my pigs. But, um, the thing is pigs - pigs would probably eat you, but it's not going to be good for them." Petitioner

again mentioned her interest in obtaining a grant to research pigs eating humans but then clarified that she was joking.

Law enforcement investigated Haney's food benefit card usage and found evidence suggesting that petitioner had been using the card. As a result, they obtained a warrant to search the property for evidence regarding identity theft. The warrant did not limit the search to any particular piece of the property. Petitioner owned nearly 20 acres of land, strewn with debris, burn and junk piles, animal enclosures, and various structures. When executing the warrant, officers spoke with petitioner, who admitted to using the benefit card. Petitioner claimed that Haney had given her the card previously to buy food and beer for him. Officers walked around the property with a video camera. Shortly after beginning the recording, while the recording officer was surveying the property before executing the search in earnest, the officer encountered a human leg. Officers arrested petitioner and applied for a new search warrant—this time for evidence of murder.

At the police station, petitioner told officers that she had found Haney "half eaten" by the pigs in her pigpen, with his "guts *** all over the place," but he was alive. She claimed that she had retrieved a rifle from her home and shot him in the head to end his suffering. She stated that he was moaning and moving his arm before she shot him. She claimed that she left him in the pen and went to feed other animals after shooting him. She explained that the reason she did not call police was her fear that the police would shoot her pigs. She returned to the pen a few days later, noting that the pigs do not eat clothes, and picked up his clothes and his remains to put in her burn barrel.

Petitioner also told officers about another body on her property, that of a man named Delicino. She told officers that Delicino was an alcoholic and described a confrontation with Delicino about a missing gun, resulting in a "tussle" over her .22 pistol. She claimed that during the melee he said that he did not want to return to prison and shot himself several times in the head. She left his body in the pigpen "until there was practically nothing left."

Law enforcement, while executing the second search warrant, found the remains of both Haney and Delicino in or around the locations that petitioner had described in her interview. Officers spoke with petitioner again, now having information about the bodies, and petitioner changed her story about Delicino, stating that she shot him, but in self-defense. Petitioner was charged with two counts of murder, two counts of abuse of a corpse in the first degree, and one count of identity theft.

Before trial, petitioner's trial counsel moved to suppress the evidence obtained as a result of executing the first search warrant. Counsel's argument focused on whether the use of the benefit card during the period that Haney was considered missing was sufficient to establish probable cause for a search warrant. Counsel did not argue that the search warrant was overly broad in allowing law enforcement to search the property beyond dwellings. The trial court denied the motion to suppress.

During the jury trial, which took place in 2015, petitioner was allowed to represent herself, but was also allowed to use counsel when she felt it was necessary.[1] Petitioner's counsel gave an opening statement in which he stated, "Now make no mistake about it, she shot both of these individuals; that is a fact. But the shooting in themselves is not a murder. It is only murder if she caused their death and she did it intentionally." He also stated that "[t]he majority of this case is [petitioner's] statements. There's nobody else to say she told them otherwise or saw it. Her statements have many contradictions and some admitted lies; even on her behalf, she'll admit those."

The state called a witness, Farris, who testified that petitioner made incriminating statements to her when they were in jail together. Specifically, Farris testified that petitioner admitted to shooting Delicino during an argument and then leaving his body in the pigpen. Farris admitted during direct examination that she was in custody "for a while" on a probation violation, that she had other felony convictions, and that her most recent methamphetamine delivery

---

[1] Petitioner raised no assignments of error regarding to her self-representation or the hybrid nature of the representation by counsel.

conviction was in 2015. At the close of direct examination, petitioner's trial counsel indicated that he did not have any questions for the witness. The jury did not learn that, at the time of her testimony, Farris had convictions for burglary, theft, and delivery and possession of methamphetamine.

The state played multiple recordings of interviews between law enforcement and petitioner for the jury. During those interviews, petitioner's version of the events varied greatly, ranging from complete denials to admissions of killing the men but having one justification or another. Throughout the interviews, petitioner called herself a liar and stated that she did not believe her own stories. One of the interviewing detectives testified at trial regarding petitioner's changing stories. The detective testified that he was "mad at certain points with [petitioner], because [he] kept hearing the same story over and over, and using [petitioner's] own words, the stories were not probable." The detective also testified that he did not believe petitioner because she had lied to him repeatedly. That testimony was elicited during redirect examination, after petitioner's trial counsel had asked the detective if he believed petitioner when she was being interviewed, because he did not investigate any of the other potential suspects or "leads" petitioner provided in her interviews. Trial counsel did not object to the testimony.

Another detective testified to his experience interviewing many people over a period of time and his belief that petitioner, during her interviews, was not telling him the truth. Trial counsel objected and moved to strike that testimony. The court sustained the objection and admonished the witness not to discuss how he felt about what was said during the interview. Trial counsel did not move for a mistrial.

In all, the jury was presented with evidence that the remains of two men's bodies were found on petitioner's property, that she had admitted to killing them with various justifications, and that she had either allowed the men to be eaten by her pigs or put the men's bodies in the pigpen for the specific purpose of allowing the pigs to eat them. The jury heard from witnesses about how petitioner's explanations were not possible, let alone probable—such as someone

shooting himself in the head five times. The jury returned guilty verdicts on all counts.

Petitioner filed an unsuccessful direct appeal, *State v. Monica*, 287 Or App 465, 404 P3d 1145, *rev den,* 362 Or 300 (2017) (affirmed without opinion), and thereafter filed this post-conviction action in the circuit court, alleging in her petition that she was denied effective and adequate assistance of her trial counsel under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution in the various respects set out above. After a hearing, the post-conviction court found that trial counsel was not ineffective and that, in any event, there would be no prejudice due to the overwhelming evidence of guilt. The post-conviction court denied all of petitioner's claims.

## II.   ANALYSIS

We review a post-conviction proceeding for legal error, and we accept the post-conviction court's factual findings if there is evidence to support such findings in the record. ORS 138.650(1); *Yeager v. Maass*, 93 Or App 561, 564, 763 P2d 184 (1988), *rev den*, 307 Or 340 (1989) ("Our duty on appeal is to determine whether the facts that the post-conviction court found are supported by the record and whether its legal conclusion, that petitioner was not unfairly prejudiced by any of the complained of conduct by his attorney, is correct."). It is a petitioner's burden to demonstrate, by a preponderance of the evidence, that (1) counsel failed to exercise reasonable professional skill and judgment; and (2) petitioner was prejudiced as a result. *See Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991); *see also Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 684 (1984); *Montez v. Czerniak*, 355 Or 1, 6-8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (state and federal post-conviction standards are "functionally equivalent"). In this case, the post-conviction court correctly rejected all of petitioner's claims.

A.   *The Motion to Suppress*

Petitioner argued to the post-conviction court that her counsel's motion to suppress was deficient because,

while the motion focused on whether there was probable cause regarding identity theft, it failed to argue that the warrant was overbroad because it allowed law enforcement to search the entire property. To prevail, petitioner must have demonstrated that it was objectively unreasonable for trial counsel to fail to make that argument, and that the argument would have been meritorious. *See Kimmelman v. Morrison*, 477 US 365, 375, 106 S Ct 2574, 91 L Ed 2d 305 (1986) (petitioner must prove that, had counsel filed a motion under the Fourth Amendment, it would have been meritorious); *Montez*, 355 Or at 8 (a petitioner must demonstrate that counsel's performance fell below an objectively reasonable standard and that, had counsel been competent, there is a reasonable probability that the outcome would have been different). Petitioner argues that reasonable trial counsel would have framed the motion to suppress within the confines of *State v. Mansor*, 363 Or 185, 421 P3d 323 (2018), and its requirement that search warrants be narrowly tailored. Petitioner further argues that, had counsel done so, the trial court would have suppressed the evidence obtained as a result of the initial search warrant, and the fruit of that allegedly poisonous tree would also have been suppressed. The superintendent responds that the affidavit in support of the warrant established that evidence of identity theft could be found on the property as a whole, particularly because the victim resided in a camper on the property and there was evidence that the victim's belongings were not all located in one place on the property. Further, the superintendent points out that the affidavit averred that the property was "littered with debris" and that evidence about identity theft could be located anywhere on the property. Testimony established that the property was cluttered, had multiple burn piles and animal enclosures, piles of refuse and junk, trailers, and miscellany. Trial counsel, having seen the justification for such a broad search of the property, was reasonable to focus on whether the warrant should have issued at all, rather than its breadth. Thus, we agree with the post-conviction court that the motion was not deficient because the affidavit in support of the warrant sufficiently established probable cause to search the entire property.

We also agree with the superintendent that, even if counsel was deficient and the motion should have been focused on the breadth and scope of the search warrant, that deficiency would not have had a tendency to affect the outcome of the case. *See Green v. Franke*, 357 Or 301, 323, 350 P3d 188 (2015) (to prove prejudice, petitioner must demonstrate that "counsel's acts or omissions *could have tended to affect* the outcome of the case" (emphasis in original; internal quotation marks omitted)). As the post-conviction court found, and the evidence supported, the officers found the leg in plain view as they were beginning their execution of the search warrant. *See State v. Carter*, 342 Or 39, 45, 147 P3d 1151 (2006) (noting that officers may seize items in plain view while executing a search warrant). The post-conviction court was thus correct to reject petitioner's claim based on the motion to suppress.

B.   *Counsel's Trial Performance*

Petitioner alleged several claims in her post-conviction petition regarding trial counsel's performance during the jury trial, including a claim that the cumulative errors of trial counsel caused her prejudice.

First, petitioner claimed that trial counsel failed to adequately impeach the witness who discussed petitioner's admissions while incarcerated. That is a spurious claim, as Farris first testified to the jury that she had multiple felony convictions, and her testimony was that she was speaking with petitioner *while incarcerated*. Framing the issue as though the jury was unaware of the criminal background of the witness is disingenuous. Having heard the witness explain that she has multiple convictions, and that her testimony was based on her communications with petitioner while both were in jail, a reasonable attorney could conclude that no further cross examination about the witness's criminal record was warranted. Further, the bulk of the evidence against petitioner was her own statements to law enforcement in multiple recordings. There was little probability that this particular witness's testimony had the weight to tend to affect the outcome of the trial. The trial court was correct to conclude that trial counsel's decision was reasonable and not deficient, and, even if the performance

was deficient, it did not tend to affect the outcome of the trial.

Petitioner next argues that the trial court erred in denying her claim for post-conviction relief based on trial counsel's deficiency in not investigating and then challenging the state's evidence that petitioner pawned shotguns in an effort to conceal the guns from law enforcement, relying on pawn shop receipts. Petitioner argues that further investigation revealed that the receipts predated the investigation of the murders, and, thus, petitioner claims the evidence was "false." That argument is based on a false premise because the state did *not* proceed on a theory that petitioner used a shotgun to kill either of the victims. The post-conviction court correctly found that the state's theory during the jury trial was that petitioner used a rifle and a pistol to kill the victims, referring to petitioner's own admissions and varying stories to corroborate the theory. The state did refer to the use of shotguns to kill one victim during closing argument, but it was in the context of sifting through the various versions of events that petitioner had provided to police, and the main thrust of the reference was the improbability of petitioner's stories. Further, petitioner's opening statement conceded that she shot the two victims and challenged only whether she had caused their deaths. Thus, trial counsel was not deficient for failing to investigate the receipts because the state was not employing a theory that would make such an investigation fruitful for petitioner's chosen defense. The post-conviction court did not err when it rejected that claim.[2]

Petitioner's next two assignments of error involve witness statements regarding her credibility. Petitioner argues that counsel was deficient because counsel failed to appropriately object to vouching testimony and, if counsel did object, counsel should also have moved for a mistrial. We agree with the post-conviction court that both claims are meritless. It is true that we have held, repeatedly, that vouching or commenting on the credibility of a witness is

---

[2] Petitioner also claimed that counsel was deficient for failing to move for a mistrial because the state knowingly submitted false evidence regarding the pawn shop receipts. We reject that claim without further discussion.

inappropriate and is grounds for reversal. *See State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) ("expressly" holding that witnesses may not comment on the credibility of other witnesses in Oregon); *State v. Lowell*, 249 Or App 364, 277 P3d 588, *rev den*, 352 Or 378 (2012) (reversing when officer, in describing interview with defendant, commented on whether the defendant was being truthful). But petitioner's theory, presented repeatedly throughout the trial, was that law enforcement did not believe petitioner, and, therefore, failed to conduct a thorough investigation. Petitioner specifically asked one detective, Henderson, about his incredulity towards petitioner's versions of events. Those questions were aimed at establishing that petitioner provided multiple leads and clues as to other potential perpetrators of the murders, but that law enforcement was being myopic due to its bias against petitioner's credibility. On redirect, seeing the door opened, the prosecutor attempted to rehabilitate the witness by asking why the officer did not believe petitioner, prompting the officer to testify about petitioner's lack of credibility during the interviews. Looking then at the argument that counsel should have objected to the testimony on redirect, reasonable counsel could have foreseen that objecting would have drawn a rebuke in front of the jury. Considering petitioner's cross examination, it was also correct to find that such an objection would not have been sustained, and, thus, would not have tended to affect the outcome of the trial.

Regarding the other detective's testimony, trial counsel actually fulfilled their obligation and objected to the testimony, moving to strike. The objection was sustained and the witness was admonished. Looking again at the context of petitioner's own defense theory and the cross examination of Detective Henderson, a motion for mistrial would not have tended to affect the outcome of the trial. The trial court was correct to reject the claims regarding vouching.

Lastly, even if Oregon courts recognized a cumulative error theory, which they have not—*see Farmer v. Premo*, 283 Or App 731, 754 n 13, 390 P3d 1054 (2017), *rev'd*, 363 Or 679, 427 P3d 170 (2018)—because we reject the previous assignments of error to trial counsel's performance, we

conclude that the trial court correctly rejected the cumulative error claim as well.

Affirmed.