98 August 27, 2025 No. 765

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL LEE DIZER,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR54911; A181167

Shelley D. Russell, Judge.

Submitted January 21, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Lauren P. Robertson, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.*

HELLMAN, J.

Affirmed.

_____
  * O'Connor, Judge *vice* Mooney, Senior Judge.

**HELLMAN, J.**

Defendant appeals a judgment of conviction entered after a jury found him guilty of two counts of robbery in the second degree, ORS 164.405, one count of aggravated theft in the first degree, ORS 164.057, and one count of theft in the first degree, ORS 164.055. In his first and second assignments of error, defendant argues that the trial court erred in denying his motions for a mistrial. In his third assignment, defendant contends that the trial court erred in denying his motion to sever. As we explain below, we first conclude that the court did not abuse its discretion in denying either of defendant's mistrial motions because any prejudice identified by defendant did not deny him a fair trial. Second, we conclude that the court did not err in denying his motion to sever because defendant has not shown that he suffered substantial prejudice as a result of joinder of the charges. Accordingly, we affirm.

Defendant's convictions are based on armed robberies of two different bars that occurred two days apart. Both bars had surveillance systems, which recorded the robberies from various angles, both inside and outside of the bars.

Defendant addresses his first and second assignments of error in a combined argument that the trial court erred in denying two mistrial motions. We review a trial court's denial of a motion for a mistrial for abuse of discretion, and we "will not reverse a conviction on that basis unless the defendant was denied a fair trial." *State v. Schumacher*, 315 Or App 298, 301, 500 P3d 698 (2021).

FIRST MISTRIAL MOTION

At trial, the state called defendant's parole officer, Roberts, as an identification witness. At defendant's request, the trial court prohibited Roberts from disclosing to the jury that he was defendant's parole officer. Roberts testified that he worked for Multnomah County and had known defendant for about nine years, but did not disclose how he knew defendant.

The state's next witness was the lead detective on the case, Russell. As he described his initial steps in identifying

a suspect in the case, Russell stated that he "contacted a PO." The prosecutor and the court immediately cut Russell off before he could say anything further. The trial court excused the jury, and defendant moved for a mistrial, arguing that the detective had disclosed to the jury that defendant had a probation officer. The trial court denied the motion because Russell did not testify that the PO had a connection to defendant.

On appeal, defendant contends that the trial court erred in denying the mistrial motion. Russell's reference to a "PO," defendant argues, was prejudicial because it implicitly told the jury that defendant has a criminal record. Defendant contends that the jury would have connected Russell's statement to Roberts' testimony and known that his probation officer was involved in the investigation.

Russell's reference to his contact with a "PO" did not deny defendant a fair trial. The prejudicial reference was made only once, and the court cut Russell off before he made any statement connecting that reference to defendant or to Roberts. *See State v. Woodall*, 259 Or App 67, 75-76, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014) (explaining that when "a prejudicial statement is made inadvertently, only once, and in passing," and when it does not explicitly reference a defendant's criminal history, then it is not likely to require a mistrial). Accordingly, the trial court did not abuse its discretion in denying defendant's mistrial motion. *See State v. Evans*, 211 Or App 162, 169-70, 154 P3d 166 (2007), *aff'd*, 344 Or 358 (2008) (no abuse of discretion in denying motion for a mistrial where the improper statement was isolated, made in passing, and it was not the product of deliberate prosecutorial misconduct).

## SECOND MISTRIAL MOTION

Before trial, defendant filed a motion to preclude in-court narration of the surveillance video evidence. Defendant argued in the motion that the videos and photographs were sufficient on their own, that no law enforcement witnesses were present during the robberies, and that allowing an officer to narrate the video would "invade the province of the jury." Discussing the motion before trial, the state agreed that it would "refrain from particularly naming

[defendant]" when playing the video, except to ask, "who did you conclude the suspect was."

During Russell's testimony at trial, the state did not play videos from either robbery, but the prosecutor did show Russell still photos of the suspect from the videos. Russell had no personal knowledge of defendant and had not met him before investigating the robberies. In showing Russell the different photos, the prosecutor repeatedly asked him "what [he] determine[d]" about the person in the photo. Russell responded that he "believed" it was defendant, that "it's [defendant]," and that he was "100% confident" that it was defendant in the photographs. When the prosecutor asked Russell about his review of the "multiple photos and videos" from the two robberies, defendant objected, and the court sustained the objection.

On redirect, the prosecutor asked Russell if he could identify defendant in a photograph, asking if he was "100% sure [he] had the correct person." Russell said that he was. Soon after, when the prosecutor again asked whether Russell believed that he had the same person, defendant objected, the trial court again sustained the objection, and the stated ended its examination.

After the court excused the jury, defendant moved for a mistrial. Defendant argued that Russell had "no personal knowledge" of defendant, and that the prosecutor's repeated questions to Russell asking if he believed defendant was the person who committed the robberies based on the photographs was "highly prejudicial." The trial court noted that the prosecutor used the phrase "100%" several times, which the court found troubling, and the court stated that the prosecutor had "walked right up to the line * * * [i]f not crossing over." Nevertheless, the trial court denied the motion for a mistrial.

On appeal, defendant argues that the trial court erred in denying the second mistrial motion because the prosecutor's questions and Russell's testimony were akin to vouching testimony or expert testimony that usurped the role of the jury. Defendant further argues that the prosecutor exacerbated that harm by "mirroring Russell's expressions

of certitude" in closing argument, where the prosecutor repeatedly stated: "What are the odds [defendant] did that robbery at the *** [first bar]? 100%?" The state argues that defendant failed to preserve his arguments and that, in any case, defendant was not denied a fair trial.

Defendant preserved his argument. Defendant's pre-trial motion to preclude in-court narration of the video raised the argument that officers who lacked "first-hand knowledge" of the events should be prohibited from "interjecting their subjective and speculative opinions" about the video or photographic evidence. Moreover, defendant objected twice to the prosecutor's questions about what Russell was able to determine from the photographs, defendant timely moved for a mistrial based on repeated questions of that nature, and the court considered the mistrial motion by observing that the prosecutor had "walked right up to the line." *See State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (observing that, sometimes, preservation can be gauged by considering whether the trial court would be surprised to find itself reversed on this issue and for this reason); *see also State v. Quebrado*, 372 Or 301, 310, 549 P3d 524 (2024) ("At its core, preservation asks whether the parties, and the trial court, had a fair opportunity to meet the merits of the argument later advanced on appeal and thereby avoid the error at the outset or to correct the error upon its occurrence."). Thus, we turn to the merits.

Abuse of discretion is a "daunting standard of review that gives the trial court's decision great deference." *Woodall*, 259 Or App at 74. "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, the trial court did not abuse its discretion." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). "A trial court abuses its discretion in denying a motion for mistrial if the effect is to deny the defendant a fair trial." *State v. Cox*, 272 Or App 390, 409, 359 P3d 257 (2015). Here, reviewing under that standard, we conclude that the trial court did not abuse its discretion in denying defendant's motion for mistrial.[1]

---

[1] Despite our conclusion, we agree that the prosecutor improperly solicited testimony identifying defendant as the person in the photographs. Russell was presented as an expert witness with 11 years of experience as a detective, yet he had no personal familiarity with defendant and was no better situated to assess

Defendant moved for a mistrial after the prosecutor repeatedly asked Russell to identify defendant from different photographs. The trial court denied the mistrial but "caution[ed]" the prosecutor from further questioning Russell on that issue. Defendant argues that the prosecutor's questions and Russell's testimony identifying him in the photographs was so prejudicial as to deny him a fair trial. Russell's testimony, however, was not the only evidence that the state relied on to identify defendant in the surveillance footage.

In addition to Russell's testimony, the state elicited testimony from Roberts, who knew defendant for more than nine years, and asked Roberts if he could identify the person in the photographs. Roberts testified that he was "very familiar" with defendant and that he was sure that it was defendant in the photographs because of the person's "facial structure, features, [and] head." The state also played a video clip from one of the robberies and asked Roberts if he could identify the person in the video. Roberts testified that he knew defendant's "walk and posture," and that he was "100 (percent) confident" that the person in the video was defendant.

Further, the state submitted evidence of unique clothing items in defendant's possession when he was arrested—including red-bottomed shoes, white pants, and two hats, one with a particular stain and the other with an uncommon pattern. Those unique items appeared to match the clothes worn by the person in the surveillance footage from both robberies. Given the considerable evidence related to the identity of the person in the videos and photographs, we are not persuaded that Russell's testimony denied defendant a fair trial. *See State v. Wyant*, 300 Or App 1, 16, 452 P3d

---

whether it was defendant in the photographs than the jury was. *See State v. Southard*, 347 Or 127, 141-42, 218 P3d 104 (2009) (holding that, in situations of child sexual abuse, a statement from an expert is inadmissible where it "does not tell the jury anything that it could not have determined on its own"); *State v. Criswell*, 282 Or App 146, 158, 386 P3d 58 (2016) (admissibility of expert testimony "turns upon whether the expert testimony assists, rather than usurps, the jury's own assessment"). We also observe that the prosecutor solicited that testimony despite pretrial litigation on the issue, which had precluded Russell from providing his opinion about the suspect's identity in a video narration and warnings from the trial court not to engage in such questioning.

471 (2019), *rev den*, 366 Or 451 (2020) (no abuse of discretion in declining to grant a mistrial when the challenged evidence was admitted through other testimony). Accordingly, the court did not abuse its discretion in denying defendant's motion for mistrial.[2]

Finally, we are not persuaded by defendant's argument that the prosecutor exacerbated the harm by referencing Russell's statements in closing argument. To be sure, in closing argument the prosecutor repeatedly stated that the odds that defendant committed the robberies were "100%," which was the level of certainty that Russell expressed. However, as we have explained, Roberts also indicated that he was "100%" confident that it was defendant in the photographs. The prosecutor's references in closing argument as to the identification of defendant were specific to Roberts; the prosecutor only referenced Russell when he discussed defendant's arrest with the unique clothing items.

## MOTION TO SEVER

In his third assignment of error, defendant argues that the trial court erred in denying his pretrial motion to sever the charges relating to the two robberies. He contends that the trial court was required to sever the charges because evidence of one robbery would not have been cross-admissible in a separate trial for the other robbery, the jury was likely to have found that defendant had a propensity to commit robberies, and the evidence connecting defendant to the second robbery was weaker than the evidence connecting him to the first robbery. Defendant also argues that joinder of the charges violated his due process rights.

When multiple charges have been properly joined under ORS 132.560(1), either party may move to sever on the basis that the party will be "substantially prejudiced" by a joint trial. ORS 132.560(3). "On review of the denial of a motion to sever, the reviewing court must determine, as a matter of law, whether the defendant suffered substantial prejudice because of joinder." *State v. Delaney*, 370 Or

---

[2] To the extent that defendant argues that the cumulative effect of Russell's testimony—that led to his first and second mistrial motions—prejudiced him, Oregon courts have not recognized a cumulative error theory of relief. *Monica v. Myers*, 319 Or App 376, 386-87, 510 P3d 238, *rev den*, 370 Or 212 (2022).

554, 575, 522 P3d 855 (2022). "And we must review for an abuse of discretion any relief that the trial court provided or declined to provide to address the substantial prejudice." *Id.*

We are not persuaded that defendant suffered substantial prejudice because of joinder of the charges. A defendant must describe a case-specific theory of prejudice that is "more than the prejudice that is an inherent risk of joining charges." *Delaney*, 370 Or at 575. "Recognized theories of substantial prejudice include but are not limited to: (1) that the jury will confuse or cumulate the evidence; (2) that the defendant may be confounded in presenting conflicting defenses; and (3) that the jury will conclude that the defendant is guilty of one crime and therefore guilty of others." *Id.* The Supreme Court has explained that the legislature amended ORS 132.560 "to adopt the federal approach to joinder" and that "multiple federal courts had held that severance was required" when "the evidence of some joined charges was much stronger than the evidence of other unrelated charges." *Id.* at 569, 572. For example, "severance was required where * * * the evidence of one joined charge was sparse," or insufficient to support a conviction, or likely to have resulted in an acquittal. *Id.* at 571-72 (discussing relevant federal cases) (internal quotation marks omitted); *see also United States v. Foutz*, 540 F2d 733, 739 (4th Cir 1976) ("We think it highly probable that a jury ignorant of the second crime * * * would have acquitted him of the earlier robbery.").

Here, defendant's case-specific theory of substantial prejudice is that the state presented stronger evidence concerning the first robbery than the second robbery, and that the jury may have been inclined to find him guilty of the second robbery based on its finding that he committed the first. However, the evidence concerning the second robbery was not so weak or sparse such that joinder of the charges resulted in substantial prejudice. The two armed robberies occurred on different days in different locations, and there was surveillance video of both robberies. Roberts, a witness who was familiar with defendant, identified him as the person in the photos or video clips of both robberies. Although the hat worn by the person in the second robbery was more generic than the hat worn in the first robbery, the second hat

had a distinctive stain that appeared to match a hat later found in defendant's possession. In addition, the trial court specifically prohibited the jury from considering evidence of one robbery as evidence of the other robbery when evaluating defendant's culpability, which further mitigated the risk of prejudice. We therefore reject defendant's argument that he was substantially prejudiced by joinder of the charges.[3] For the same reasons, we also conclude that joinder of the charges did not result in a fundamentally unfair trial that violated defendant's due process rights. *See State v. Taylor*, 364 Or 364, 378 n 8, 434 P3d 331 (2019) ("Defendant has offered no basis to conclude that a trial on properly joined charges could be fundamentally unfair when the joinder does not cause substantial prejudice.").

   Affirmed.

---

[3] In *Delaney*, the Supreme Court declined to "unilaterally take up the question" of whether our review is "limited to the state of the record at the time of the court's ruling on the motion to sever." 370 Or at 576 n 14 (internal quotation marks omitted). Whether or not our review is so limited, we conclude that defendant failed to show that he was substantially prejudiced by joinder.