Argued and submitted May 5, decision of Court of Appeals and judgment of circuit court affirmed December 22, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

ANTHONY RANDALL DELANEY,
*Petitioner on Review.*

(CC 17CR15134) (CA A165686) (SC S068908)

522 P3d 855

Defendant was charged with multiple sex offenses arising from two separate incidents, each involving a different victim. Before trial, defendant moved to sever the charges relating to each victim, arguing under ORS 132.560(3) that he would be substantially prejudiced by joinder of those charges because the state's summary of the evidence that it expected to present at trial included evidence that one victim had reported defendant's conduct because she had heard that defendant had similarly harmed other women. The prosecutor then clarified the witnesses' prior statements about her motivation for coming forward in a way that made no mention of having heard that defendant had harmed other women, and defendant did not offer another theory of substantial prejudice. The trial court denied defendant's motion, witness did not offer the testimony that defendant had identified as substantially prejudicial, and a jury convicted defendant of all the charged offenses. The Court of Appeals affirmed in a written opinion. *Held*: ORS 132.560(3) requires the moving party to identify a case-specific theory of how a joint trial will be substantially prejudicial. Whether the identified harm is substantially prejudicial is a legal question that may require the trial court to make certain preliminary determinations about the nature of the expected evidence. Here, the trial court did not err in rejecting defendant's theory of substantial prejudice because the record permitted the court to infer that the state would not in fact offer the identified prejudicial evidence.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Jonathan N. Schildt, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on

_____
 * On appeal from the Clackamas County Circuit Court, Michael C. Wetzel, Judge. 314 Or App 561, 498 P3d 315 (2021).

review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, Justices, and Linder, Senior Judge, Justice pro tempore.**

FLYNN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

** DeHoog, J., did not participate in the consideration or decision of this case.

**FLYNN, J.**

Defendant appeals his convictions on multiple sex offenses arising from two separate incidents, each involving a different victim. He challenges the trial court's refusal to sever the counts involving the first incident from the counts involving the second incident. At issue is the proper application of ORS 132.560(3), which describes actions that a trial court "may order" when "it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses" that otherwise satisfy the requirements for joining multiple offenses. Defendant contends that the state's pretrial description of the evidence that it expected to offer demonstrated that defendant would be substantially prejudiced by a joint trial, and he contends that the prejudice that he identified required the court to sever the counts. The Court of Appeals affirmed the judgment, and we allowed review to address the type of showing that the legislature intended to require when it adopted the "substantially prejudiced" standard.

As we will explain, a defendant seeking severance under ORS 132.560(3) must identify a case-specific theory of substantial prejudice that is more than the prejudice that is inherent whenever joined charges allow the jury to hear that the defendant may have committed other bad acts. And whether a defendant has identified a case-specific theory that meets the "substantially prejudiced" standard is a question of law that the appellate court reviews without deference to the trial court. Applying those standards, we conclude that defendant has failed to demonstrate that the trial court erred in denying defendant's motion to sever. Accordingly, we affirm.

## I.  FACTS

The state charged defendant with six sex offenses in a single indictment. The first three counts—first-degree rape (ORS 163.375), first-degree sexual abuse (ORS 163.427), and second-degree sexual abuse (ORS 163.425)—related to a 2014 incident involving M. The second three counts—first-degree sodomy (ORS 163.405), first-degree sexual abuse, and second-degree sexual abuse—related to a 2016 incident

involving L. Before trial, defendant moved to sever the charges related to each incident and corresponding victim, arguing under ORS 132.560(3) that joinder of the charges would cause substantial prejudice because the evidence of each incident would improperly influence the jury regarding the other.

The trial court held a hearing and asked the state to describe the facts of both incidents in the light most favorable to the state.[1] The state first summarized the evidence that it expected to offer with respect to the 2014 incident involving M. The state explained that M met defendant through mutual friends and later contacted defendant so that defendant could help M sell her car. According to the state, M would testify that she went to a property in Estacada, where defendant kept a small trailer and a boat. M later accepted defendant's suggestion that she take a nap in his boat and continued sleeping on the boat when defendant told her that he was taking it out onto the river.

When M later woke up, her pants were down, and defendant was raping her. M did not react because she was afraid of defendant, and they were alone on the river. M pretended to sleep until after defendant finished, and then M pretended to wake up. Defendant and M later returned to shore, and M did not have any other significant contact with defendant. M delayed reporting the incident for over two years. According to the state, M's explanation for why she ultimately came forward was that she had "heard allegedly that he's done similar things to other women."

The state then summarized the evidence relating to L, including L's expected testimony about defendant sexually assaulting her in 2016. The state explained that L was acquainted with defendant and was walking alone when defendant pulled over and offered her a ride to her destination. When L accepted the ride, defendant instead drove L

---

[1] ORS 132.560 does not prescribe a procedure for trial courts to follow when considering a motion to sever joined charges. But the court's instruction that the prosecutor describe the evidence that the state expected to present at trial in the light most favorable to the state was an effective way for the court in this case to assess defendant's argument that he would be prejudiced by the joinder of multiple charges.

to the property in Estacada after telling L that he needed to "go up there" and "do a few things." Although L initially refused to go into the trailer, defendant told her that he would be at least an hour, and L agreed to wait inside defendant's trailer.

Later, defendant told L that he wanted her to perform oral sex. Defendant pointed a firearm at L and hit her in the head, and she acquiesced to performing oral sex. Afterward, defendant would not let L leave his trailer to go to the bathroom, which was outside, without supervising her. When defendant later fell asleep, L fled from the trailer, leaving behind her purse. She ran toward town until she encountered an older man and told him that she had just been sexually assaulted and needed to make a phone call. Either L or the man contacted the police that day, and L later provided a statement describing the assault. As part of L's report, law enforcement took photographs of L's injuries, which included a head injury and bruising on her arms.

Based on the state's description of the evidence, defendant argued that he would be substantially prejudiced by the joinder of charges arising from the two incidents and that the court should exercise its discretion to sever the charges. Specifically, defendant argued that he would be prejudiced by "cross-pollination of prior bad acts, as motivation," if each witness were to testify that she "came forward because [she] heard about all these prior bad acts that he did on these other women." And he argued that the prejudice could not be adequately addressed by a jury instruction.

After defendant's argument, the prosecutor consulted police reports that described the previous statements made by M and L and offered more background "to clarify just a couple things with regard to the facts." The state then explained that the victims reported defendant's conduct because they were concerned that defendant would harm other women in the future: "I mean, [M and L] do talk about the concerns that the defendant, you know, may do this again in the future. And so that is part of the reason that they came forward." The prosecutor further explained that M had told law enforcement that she wanted to report defendant's assault because she had heard that defendant

was dating her friend and M was concerned that defendant might harm that friend.[2]

The trial court denied defendant's motion to sever, and the case proceeded to trial. The trial testimony from M and L described the alleged attacks much as the prosecutor's summary had predicted, but neither witness testified that she had heard about defendant committing bad acts against other women.[3] Ultimately, the jury found defendant guilty of all the charged offenses.

Defendant appealed, challenging the trial court's denial of his motion to sever, and the Court of Appeals affirmed in a written decision. *State v. Delaney*, 314 Or App 561, 498 P3d 315 (2021). The court concluded that defendant was not substantially prejudiced, because the evidence of defendant's conduct towards M and L "was sufficiently simple and distinct to mitigate the dangers created by a joint trial." *Id*. at 571. In other words, the court concluded that, because the charges "arose from different incidents that occurred at different times and places and involved different victims, the availability of proper jury instructions and limiting the state's cross-examination would have cured any prejudice resulting from joinder." *Id*. at 572 (internal quotation marks omitted).

In his briefing to this court, defendant criticizes the Court of Appeals' reliance on a "simple and distinct" evidence inquiry for denying severance, and he again argues that the predicted testimony about defendant's

_____

[2] As described below, the parties disagree on the significance of the state's "clarification." The state argues that the prosecutor was correcting a previous misstatement and clarifying that M came forward because of a prospective concern that defendant would harm other women in the future. Defendant disagrees and argues that the state was providing additional information rather than correcting a prior misstatement.

[3] The Court of Appeals observed, and we agree, that the state's description of the evidence referred only to M having come forward because she "heard" that defendant had harmed other women. *State v. Delaney*, 314 Or App 561, 571, 498 P3d 315 (2021). We also note that the state's description of both victims' testimony included a reference to being afraid of defendant because they had heard that defendant was "scary" or "dangerous," that he was involved in a gang, and that he always carried weapons with him. In this court, defendant argues only that he could have been prejudiced from M testifying that she was motivated by an awareness of prior bad acts against other women, and we limit our analysis to that theory.

reputation for sexual violence was so prejudicial that the trial court abused its discretion when it denied his motion to sever.

## II.   ANALYSIS

The rules for joinder in Oregon are governed by statute. ORS 132.560 describes both the standard for joining multiple charges in the same charging instrument and the requirement for granting relief despite proper joinder. In relevant part, ORS 132.560(1) provides:

"A charging instrument must charge but one offense, and in one form only, except that:

"* * * * *

"(b)   Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)   Of the same or similar character;

"(B)   Based on the same act or transaction; or

"(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

And ORS 132.560(3) sets out severance or other relief from joinder:

"(3)   If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

Because there is no dispute that the charges against defendant were properly joined in the same indictment, our focus is on the severance provision set out in subsection (3), and ultimately on whether the trial court was required to grant defendant's motion to sever the charges related to M from the charges related to L. That ultimate question, however, encompasses several component questions that we

also must resolve. Most significantly, the parties disagree about the meaning of "substantial prejudice" and the circumstances under which a trial court is required to sever joined charges. Our resolution of that dispute, however, turns on additional questions about how a reviewing court determines whether that standard was met.

All of those disputes present questions of statutory construction that we resolve by employing our well-established analytical framework, as set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we examine the text and context of ORS 132.560, including our prior cases interpreting that statute, and we consider legislative history to the extent that it aids the analysis—all with the goal of determining the intent of the legislature. *See Gaines*, 346 Or at 171-72; *State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) ("Our analysis of [the statute] is also informed by this court's prior construction of that statute or its predecessors.").

For the reasons that follow, we conclude that whether the joinder of multiple charges substantially prejudices a party is a question of law and, thus, that an appellate court reviews the question without deference to the determination of the trial court. We emphasize, however, that that legal question is a circumstance-dependent inquiry; that relevant circumstances can include whether joinder would permit a jury to hear otherwise-inadmissible evidence; and that case-specific circumstances may require severance even if the evidence of the joined charges is simple and distinct.

We also conclude that, in this case, the trial court did not err in rejecting defendant's theory of substantial prejudice because the record permitted the court to infer that the state would not in fact offer the identified prejudicial evidence. Accordingly, the judgment of conviction is affirmed. The decision of the Court of Appeals is also affirmed, although we take this opportunity to clarify the role of a "simple and distinct" inquiry when an Oregon court considers a party's claim of substantial prejudice caused by joinder of unrelated offenses.

## A.   *Brief Overview of Oregon Joinder Law*

Oregon law has permitted the joinder of certain offenses for indictment and trial since 1933.[4] *See State v. Warren*, 364 Or 105, 117, 430 P3d 1036 (2018) (describing Or Laws 1933, ch 40, § 1; OCLA § 26-711 (1940), *recodified at* ORS 132.560 (1953), *amended by* Or Laws 1989, ch 842, § 1, *amended by* Or Laws 1993, ch 278, § 1). But the modern joinder provisions at issue here are primarily the product of a 1989 amendment through House Bill (HB) 2251. Or Laws 1989, ch 842, § 1. That amendment expanded the bases for joinder but also created a process for courts to address cases in which the joining of multiple charges caused prejudice to either party. Or Laws 1989, ch 842, § 1; *see also Warren*, 364 Or at 125 (explaining that the "purpose of the 1989 amendment was to expand the bases for joinder"). The legislature borrowed wording for the new provisions from the federal rules that govern the joinder of criminal offenses and relief from prejudicial joinder, FRCrP 8(a)[5] and FRCrP 14.[6] *See* Exhibit R, House Committee on Judiciary, HB 2251, Jan 14, 1989 (a staff measure summary indicating that "HB 2251 would bring Oregon law into conformance with Rule 8 of the Federal Rules of Criminal Procedure which allows joinder of

---

[4] Until then, Oregon law included a complete prohibition on the joinder of charges and allowed the state to charge the defendant with only one crime in the indictment, "except that where the crime may be committed by the use of different means, the indictment may allege the means in the alternative." *See* General Laws of Oregon, Crim Code, ch VIII, title I, § 72, p 350 (Deady & Lane 1843-1872); The Codes and General Laws of Oregon, ch VIII, title I, § 1273 (Hill 1887); The Codes and Statutes of Oregon, title XVIII, ch VIII, § 1308 (Bellinger & Cotton 1901); Lord's Oregon Laws, title XVIII, ch VII, § 1442 (1910); Oregon Laws, title XVIII, ch VII, § 1442 (1920); Oregon Code, title XIII, ch 7, § 13-708 (1930).

[5] FRCrP 8(a) (1989) provided:

"Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

[6] FRCrP 14 (1989) provided:

"Relief from Prejudicial Joinder. If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials or counts, grant a severance of defendants or provide whatever other relief justice requires."

offenses"); Exhibit LL, Senate Committee on Judiciary, HB 2251, June 7, 1989 (same).

Ten years later, the legislature amended ORS 132.560 again, changing "prejudiced" to "substantially prejudiced." Or Laws 1999, ch 1040, § 17. That amendment followed this court's decision in *State v. Miller*, 327 Or 622, 969 P2d 1006 (1998), which the Oregon District Attorneys Association (ODAA) argued was confusing some trial courts about the threshold for what constituted "prejudice" that justified severance of joined charges. Tape Recording, Senate Committee on Judiciary, HB 3374, June 30, 1999, Tape 261, Side A (testimony of Marion County District Attorney Dale Penn, urging an amendment to "bring[] in the term that the federal courts and the Court of Appeals have always interpreted this to say, and that is 'substantial prejudice'" because trial judges "in some counties" have read *Miller* and are "trying to sever in more cases"). And the 1999 legislative history again highlights an intent that Oregon joinder decisions align with the federal decisions interpreting FRCrP 8 and FRCrP 14. *Id.*

B.   *Whether a party is "substantially prejudiced" by joinder is a legal determination.*

Although the state contends that we should review the denial of a motion to sever for abuse of discretion, we have previously held otherwise. In *Miller*, this court explained that evaluating a motion to sever under ORS 132.560(3) involves two distinct inquiries: (1) "whether the facts stated in the motion show the existence of prejudice"; and (2) if so, "the appropriate form of relief." 327 Or at 629. We concluded that the first inquiry "is a legal determination that is subject to appellate review for errors of law," while the second "is a choice that the statute commits to the trial court's discretion." *Id*.

The state acknowledges that holding in *Miller* but invites us to reconsider whether the determination of substantial prejudice under ORS 132.560(3) should be a legal determination, in light of the amendments to that provision by the 1999 legislature. The state points to indications that the 1999 legislature intended to adopt the federal approach to review of motions to sever, which—according to the

state—involved reviewing determinations of prejudice for an abuse of discretion. For present purposes, we assume, without necessarily agreeing, that is a correct understanding of the federal case law. Even so, we decline to disavow our conclusion in *Miller* for two reasons.

First, the text of the statute itself continues to suggest that the legislature contemplated a two-step analytical process: The statute specifies that, "[*i*]*f* it appears" that a party "is substantially prejudiced," *then* "the court may order" relief. ORS 132.560(3) (emphasis added). And because the legislature did not amend that wording when it changed "prejudiced" to "substantially prejudiced," nothing in the 1999 amendments alters our conclusion in *Miller* that the first inquiry is a legal determination. *See Miller*, 327 Or at 628 (explaining that "[t]he statute does not indicate that the trial court's determination about whether joinder of offenses causes prejudice is a discretionary choice"). Although the 1999 legislature amended ORS 132.560 in response to this court's decision in *Miller*, as described above, the legislature's concern was with confusion in the trial courts about the "prejudice" threshold for severing joined charges. 370 Or at 563 (quoting testimony of Dale Penn). Indeed, there was no testimony suggesting concern with *Miller*'s conclusion that the prejudice inquiry is a legal determination; proponents of the measure expressly endorsed the holding of *Miller* as correct. *See* Tape Recording, Senate Committee on Judiciary, HB 3374, June 30, 1999, Tape 261, Side A (testimony of Dale Penn, agreeing with this court's holding "that severance was not appropriate; joinder was the right thing to do").

Second, in multiple decisions since *Miller*, this court has continued to review the question of prejudice under ORS 132.560(3) as a question of law—including as recently as 2019. *See State v. Taylor*, 364 Or 364, 378, 434 P3d 331, *cert den*, ___ US ___, 140 S Ct 505 (2019) (explaining that "[w]e review for errors of law the trial court's determination that the joinder will not result in substantial prejudice"); *see also State v. Barone*, 329 Or 210, 217, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) (same); *State v. Thompson*, 328 Or 248, 257, 971 P2d 879, *cert den*, 527 US 1042 (1999) (same). For those reasons, we decline to reconsider the

standard by which we review substantial prejudice under ORS 132.560(3). *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 697-98, 261 P3d 1 (2011) (explaining that this court follows its prior constructions of a statute as a matter of *stare decisis* and assumes that issues considered in those cases were correctly decided).

Thus, we adhere to our conclusion in *Miller* that we review as a matter of law the question of whether the harm that a party has identified from the joinder of multiple charges rises to the level of substantial prejudice. With that question resolved, we turn to the more complicated dispute regarding the kind of harm that will rise to the level of substantial prejudice.

## C.  *"Substantial Prejudice" Under ORS 132.560*

Under ORS 132.560(3), severance of joined charges is permitted when it appears that a party is "substantially prejudiced" by joinder. Defendant argues that the defendant is "substantially prejudiced" by joinder when evidence of one unrelated charge may improperly influence the jury regarding another charge, even when the evidence of each charge is so "simple and distinct" that the jury will not be confused. Defendant references *Black's Law Dictionary*, which defines "prejudice" as "[d]amage or detriment to one's legal rights or claims." *Black's* 1428 (11th ed 2019). Defendant then notes that the text of ORS 132.560(3) does not limit or qualify the kinds of "prejudice" that can justify severance. Accordingly, defendant argues, the legislature intended to permit severance when it appears that joinder would cause a defendant to suffer any kind of detriment to their defense at trial, if that detriment is substantial.

The state responds that the legislature intended to adopt the federal standards for joinder and severance, and it urges us to conclude that the legislature understood the federal standard to equate "prejudice" that requires the severance of joined charges with prejudice that impairs the defendant's right to a fair trial. The state emphasizes this court's statement in *Miller* that "[t]he 'prejudice' standard in ORS 132.560(3) demonstrates that the legislature intended to authorize the court to safeguard the parties from potential

injury or harm to their interests in a fair trial," 327 Or at 627 (emphasis omitted), which the state views as consistent with federal joinder law. The state adds that, under this court's decisions, the defendant must identify case-specific prejudice that will result from joinder when moving to sever charges that were joined under ORS 132.560(1). And the state argues that, when evidence of multiple charges is sufficiently "simple and distinct" to "allow the jury to compartmentalize the evidence of each offense," the trial court does not err by denying the defendant's motion to sever.

Both parties are correct in part. Our prior decisions about ORS 132.560(3) and the extensive legislative history identify three key principles for evaluating whether the defendant was substantially prejudiced by the joinder of unrelated charges. First, claims of prejudice arising from joinder are evaluated on a "case-by-case" basis to determine whether the defendant has identified the kind of potential injury or harm that threatens the defendant's interest in a fair trial. *Miller*, 327 Or at 627, 629. Second, to establish that the defendant was prejudiced by joinder, the defendant must articulate a case-specific theory of prejudice. *Thompson*, 328 Or at 257. And third, the defendant's theory must demonstrate a degree of prejudice beyond the prejudice that is inherent to the joinder of unrelated charges. *Miller*, 327 Or at 634.

This court first considered a claim that the defendant was prejudiced by joinder of charges in *Miller*, in which the defendant claimed that he was prejudiced by the joinder of multiple sex offenses involving two separate victims. 327 Or at 625. In *Miller*, we explained that the statutory "prejudice" standard is intended to "safeguard the parties from potential injury or harm to their interests in a *fair trial*." *Id*. at 627 (emphasis in original). Those interests include "the interest in a trial conducted efficiently, and in accordance with all applicable laws," and the interest "in a decision based on a dispassionate consideration of the evidence rather than bias, emotion, or other improper criteria." *Id*. at 627-28. But we rejected the state's argument that we should construe the "prejudice" standard of *former* ORS 132.560(3) as a "substantial prejudice" standard. *Id*. at 628.

Applying those general standards, we concluded that the defendant had not established prejudice under the statute, and we rejected a definition of prejudice that is very similar to the standard that defendant urges us to apply in this case. The defendant in *Miller* argued that prejudice is inherent when unrelated violent crimes are joined if the evidence of the unrelated charges would not be cross-admissible in separate trials. *Id*. at 625. The defendant also argued that he was prejudiced because he would testify in his own defense regarding some charges but might not testify regarding the other counts. *Id*. He further argued that this court "should conclude categorically that prejudice exists" under those circumstances. *Id*. at 629.

We rejected those arguments. *Id*. at 635. First, we rejected the defendant's "categorical approach" to claims of prejudice resulting from the joinder of unrelated crimes and instead explained that the prejudice analysis "must flow from a case-by-case assessment" rather than a "one size fits all" approach. *Id*. at 629. In other words, and as pertinent to our inquiry here, we concluded that defendants cannot demonstrate, as a matter of law, that they are "prejudiced" solely on the basis that the joined charges are unrelated violent offenses or solely on the basis that evidence will be introduced that would not be cross-admissible in separate trials.[7] We recognized that joinder of unrelated claims presents an inherent risk of prejudice. *See id*. at 634 (explaining that "there was at least some degree of danger that admitting evidence of [the] defendant's multiple offenses in a joint trial

---

[7] Defendant understands *Miller* to stand for the proposition there is no "cognizable prejudice" when the identified harm from joinder is "the admission of evidence to prove one charge that would be inadmissible other-acts evidence under OEC 404(3) in a separate trial on another charge." He understands the Court of Appeals also to have read *Miller* for the proposition stated above, citing six decisions including *State v. Murphy*, 307 Or App 844, 845, 478 P3d 1018 (2020), *rev den*, 368 Or 168 (2021), and *State v. Dewhitt*, 276 Or App 373, 386-87, 368 P3d 373, *rev den*, 359 Or 667 (2016). We decline the invitation to disavow *Miller* because the proposition that is of concern to defendant is not found in *Miller*. Rather, we explained that "the trial court [had] correctly considered whether evidence of defendant's multiple criminal acts would be admissible in separate trials on the charged offenses," because that "inquiry is probative, at least to some degree, of whether joinder causes prejudice to [the] defendant." 327 Or at 631. To the extent that Court of Appeals' decisions could be understood as suggesting that cross-admissibility is never cognizable prejudice, that suggestion is contrary to *Miller*.

would tempt the jury to decide the case on the basis of the defendant's perceived propensity to commit crimes"). But we also noted that categorically allowing severance when the evidence of unrelated charges would not be cross-admissible in separate trials "would undermine the legislature's policy choice to authorize joinder of unrelated charges for trial." *Id*. at 632.

In *Thompson* and *Barone*, we reiterated that a successful claim of prejudice under ORS 132.560(3) must identify prejudice based on the defendant's case. In *Thompson*, we noted that the defendant "essentially argue[d] that the jury's decision was not based on dispassionate consideration of the evidence." 328 Or at 257. But because the defendant "[did] not support his claim of error with arguments based on the facts of his case," we concluded that the "defendant ha[d] failed to demonstrate he was prejudiced, within the meaning of ORS 132.560(3)." *Id*.

We again rejected the defendant's claim of prejudice in *Barone* because the defendant's theory of prejudice was not case-specific. 329 Or at 217. Instead, the defendant argued that it was "obvious" that joinder of charges for separate murders was "highly inflammatory" and allowed the state to make the defendant look guilty because of other murders, rather than being "required to prove each case on its merits." *Id*. In rejecting the defendant's claim, we emphasized that such general arguments "could be made in any case in which charges are joined." *Id*. Accordingly, we concluded that "[a]bsent an argument of prejudice related to the specific facts of [the] case *** [the] defendant [had] failed to demonstrate that he was prejudiced within the meaning of ORS 132.560(3)." *Id*.

Although *Miller*, *Thompson*, and *Barone* were all decided under the 1989 version of ORS 132.560(3), *Taylor* was not. In that more recent case, we again emphasized the requirement of a case-specific theory of prejudice. We explained that the defendant's argument that "the jurors will convict a defendant based, not upon the evidence, but upon their perception of the defendant's bad character," was a general concern of prejudice and not specific to the defendant's case. 364 Or at 379. And because the defendant had

not offered a case-specific theory of prejudice, we concluded that the defendant had failed to demonstrate that he was "substantially prejudiced" by joinder. *Id*.

The legislative history of ORS 132.560(3) further illuminates what kind of joinder-related detriment the legislature intended would rise to the level of substantial prejudice and trigger a right to relief. As noted above, the legislature amended ORS 132.560 through HB 2251 by adding language borrowed from FRCrP 8(a) and FRCrP 14. And it is undisputed that the purpose of the amendment was to adopt the federal approach to joinder. The legislative history of HB 2251 is replete with references to the intent to bring Oregon joinder law into conformance with federal law. *See, e.g.*, Exhibit R, House Committee on Judiciary, HB 2251, Jan 14, 1989 (Staff Measure Summary); *see also Warren*, 364 Or at 126 (agreeing with the state's argument that "the legislature intended to adopt the *substantive* portion of the federal rules insofar as federal law had expanded the scope of what offenses may [be] joined in a single indictment" (brackets in original)).

The legislative history also includes a request from ODAA for the legislature to adopt, as legislative history, federal decisions interpreting the Federal Rules of Criminal Procedure to guide Oregon courts in interpreting ORS 132.560.[8] Exhibits H & I, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2251, Jan 13, 1989 (ODAA letter and memo); Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2251, Jan 13, 1989, Tape 1, Side B (testimony of Dale Penn). ODAA specifically referenced the

---

[8] The federal decisions referenced by ODAA in the legislative history are: *United States v. Disla*, 805 F2d 1340 (9th Cir 1986); *United States v. Evans*, 796 F2d 264 (9th Cir 1986); *United States v. Lewis*, 787 F2d 1318, *opinion amended on denial of reh'g*, 798 F2d 1250 (9th Cir 1986); *United States v. Roberts*, 783 F2d 767 (9th Cir 1985); *United States v. Irvine*, 756 F2d 708 (9th Cir 1985); *United States v. Nolan*, 700 F2d 479 (9th Cir), *cert den*, 462 US 1123 (1983); *United States v. Anderson*, 642 F2d 281 (9th Cir 1981); *United States v. Armstrong*, 621 F2d 951 (9th Cir 1980); *United States v. Reed*, 620 F2d 709 (9th Cir), *cert den*, 449 US 880 (1980); *United States v. Bronco*, 597 F2d 1300 (9th Cir 1979); *United States v. Foutz*, 540 F2d 733 (4th Cir 1976); *United States v. Ragghianti*, 527 F2d 586 (9th Cir 1975); *United States v. Olson*, 504 F2d 1222 (9th Cir 1974); *Baker v. United States*, 401 F2d 958 (DC Cir 1968); and *Drew v. United States*, 331 F2d 85 (DC Cir 1964).

Ninth Circuit's analysis of joinder law as a model for Oregon courts. Tape Recording, Senate Committee on Judiciary, HB 2251, June 7, 1989, Tape 228, Side A (testimony of Dale Penn). And Chair Tom Mason explained that HB 2251 would adopt the federal interpretation of FRCrP 8 and FrCrP 14 and referenced three decisions that had interpreted joinder rules as examples of that approach.[9] Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2251, Jan 13, 1989, Tape 2, Side A.

The 1999 legislature reiterated that intent. As explained above, the 1999 legislature approved HB 3374, which, among other things, amended ORS 132.560(3) by changing "prejudiced" to "substantially prejudiced." Or Laws 1999, ch 1040, § 17. That change was requested by ODAA because our decision in *Miller* had contradicted prior Court of Appeals decisions that had relied on federal decisions and reviewed motions to sever pursuant to ORS 132.560(3) for "substantial prejudice."[10] Tape Recording, Senate Committee on Judiciary, HB 3374, June 29, 1999, Tape 261, Side A (testimony of Dale Penn). ODAA argued that by adopting the "substantial prejudice" standard, Oregon courts would interpret ORS 132.560 in conformity with federal decisions, as the Court of Appeals had. *See id*. (testimony of Dale Penn, explaining that "everything was going fine until the *Miller* case" because "the Court of Appeals reviewed cases and adopted [the] federal standards" as the legislature had intended and urging an amendment adopting "substantial prejudice" to "bring[] in the term that the federal courts and the Court of Appeals" had used).[11]

---

[9] Those cases are *United States v. Weber*, 437 F2d 327 (3rd Cir 1970), *cert den*, 402 US 392 (1971), *Drew*, 331 F2d 85, and *Commonwealth v. Lasch*, 464 Pa 573, 347 A2d 690 (1975).

[10] *See, e.g.*, *State v. Meyer*, 109 Or App 598, 604, 820 P2d 861 (1991), *rev den*, 312 Or 677 (1992) ("Under [FRCrP] 14, a denial of severance is reviewed for abuse of discretion and, in order to prevail, a defendant must show *substantial* prejudice." (Citing *United States v. Werner*, 620 F2d 922, 928 (2nd Cir 1980) (emphasis in original)).

[11] We note that the decisions cited by ODAA in the legislative history of 1989 HB 2251 did not reference "substantial prejudice." Of the 15 cases that ODAA requested that the legislature include in the legislative history, one case had referenced "untoward prejudice." *Foutz*, 540 F2d at 737. Two cases had referred to "undue prejudice." *Lewis*, 787 F2d at 1322; *Olson*, 504 F2d at 1224. Another two cases had asked whether joinder "sufficiently prejudiced" the defendant or

By adopting the federal framework for analyzing claims of "prejudice" under FRCrP 14, the legislature would have understood that it had adopted certain key principles to assist Oregon courts. Those principles include the recognition that joinder of charges presents an inherent risk of prejudice to the defendant, *United States v. Reed*, 620 F2d 709, 712 (9th Cir), *cert den*, 449 US 880 (1980), but that the decision to permit joinder accepted that risk to some extent, because "joinder is the rule rather than the exception," *United States v. Armstrong*, 621 F2d 951, 954 (9th Cir 1980).

In addition, as in Oregon, the federal courts had rejected categorical approaches to prejudice and instead evaluated claims of prejudice on a case-by-case basis. *See United States v. Lewis*, 787 F2d 1318, 1322, *opinion amended on denial of reh'g*, 798 F2d 1250 (9th Cir 1986) (rejecting *per se* rule of prejudice based on the cross-admissibility of evidence and instead embracing case-by-case approach). But, when the legislature adopted wording from the federal rules, federal courts had described at least three theories of prejudice that can justify severing charges. Exhibit I, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2251, Jan 13, 1989 (statement of Dale Penn). First, "the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict [them] of either if it could keep the evidence properly segregated"; second, "the defendant may be confounded in presenting defenses, as where [they] desire[] to assert [their] privilege against self-incrimination with respect to one crime but not the other"; and third, "the jury may conclude that the defendant is guilty of one crime and then find [them] guilty of the other because of [their] criminal disposition."[12] *United States v. Foutz*, 540 F2d 733, 736

---

was "sufficiently prejudicial" to require severance. *Anderson*, 642 F2d at 285; *Foutz*, 540 F2d at 738. Three cases had considered whether joinder of charges was "manifestly prejudicial." *Lewis*, 787 F2d at 1321; *Irvine*, 756 F2d at 712; *Armstrong*, 621 F2d at 954. It appears that the first reference to "substantial prejudice" in Oregon case law interpreting ORS 132.560(3) was in *Meyer*, 109 Or App at 604, where the Court of Appeals quoted *Werner*, 620 F2d at 928.

[12] Under the second theory of prejudice, the federal courts had concluded that the defendant must make "a convincing showing that he has both important testimony to give concerning one count and [a] strong need to refrain from testifying on the other." *Armstrong*, 621 F2d at 954.

(4th Cir 1976); *see also United States v. Ragghianti*, 527 F2d 586, 587 (9th Cir 1975) (describing "three possible kinds of prejudice" that result from joinder of unrelated offenses as "(1) the jury may consider that the defendant must be bad to have been charged with so many things; (2) inadmissible proof of one offense may be admissible through a joined offense; and (3) the defendant may wish to testify on one count but not another" (citing Charles A. Wright, 1 *Federal Practice and Procedure* § 222, 437 (1969)).

The federal cases also identified circumstances under which joinder of multiple charges was so prejudicial that the trial court was required to sever. *See, e.g.*, *Armstrong*, 621 F2d at 954 (explaining that the moving party needed "to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever"); *Lewis*, 787 F2d at 1321 (explaining that the court will reverse the denial of a motion to sever charges only when the prejudice was "of such magnitude that the defendant's right to a fair trial was abridged").

For example, multiple federal courts had held that severance was required because the evidence of some joined charges was much stronger than the evidence of other unrelated charges. *See Ragghianti*, 527 F2d at 587-88 (concluding that severance was required where the evidence for one charge was insufficient to support a conviction and the trial court granted a post-verdict motion for acquittal on that charge); *Lewis*, 787 F2d at 1322-23 (concluding that severance was required where evidence of prior crimes was admissible for some but not all charges and the evidence of one joined charge was "sparse"); *Foutz*, 540 F2d at 739 (explaining that, because the evidence of one charge was weaker than the other, there was a "strong likelihood that the jury found [the defendant] guilty of the second robbery, and then concluded that since he had once robbed the bank, it was plausible that he had done so before"). From those federal decisions, the legislature would have understood that the harm from introducing evidence of multiple bad acts could—under certain circumstances—contribute to prejudice so substantial that it required severance, even

if the decision to allow joinder accepted that risk to some extent.

The federal decisions also provide guidance as to a key issue in this case—the relevance of a determination that the evidence regarding the joined charges is "simple and distinct." As explained above, the Court of Appeals highlighted that consideration in concluding that defendant was not substantially prejudiced by the joining of charges here because the evidence of defendant's conduct towards M and L "was sufficiently simple and distinct to mitigate the dangers created by a joint trial." *Delaney*, 314 Or App at 571. In reaching that conclusion, it relied on earlier cases in which it had also highlighted the "simple and distinct" inquiry. *See, e.g.*, *State v. Cox*, 272 Or App 390, 396-97, 359 P3d 257 (2015) (describing the Court of Appeals' "simple and distinct" inquiry). According to defendant, the Court of Appeals decisions have erroneously treated that consideration as dispositive of whether a defendant is substantially prejudiced by the joinder of charges. Although the state contends that defendant overstates the weight that the Court of Appeals has attributed to the "simple and distinct" inquiry, we share defendant's concern that there is at least a risk of confusion.

We take this opportunity to clarify that a party may be substantially prejudiced by the joinder of charges even where evidence of the joined charges is "simple and distinct." For one thing, there are categories of prejudice, which we understand the legislature to have recognized under ORS 132.560(3), where the prejudicial effect of the evidence will have little to do with whether it is "simple and distinct." Although federal courts applying FRCrP 14 sometimes considered whether evidence was "simple and distinct," they did so when considering harm based on the admission of evidence that might not have been admissible in separate trials, or in assessing whether such harm could be adequately addressed with a cautionary instruction. *See Drew v. United States*, 331 F2d 85, 91 (DC Cir 1964) (explaining that there was "no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials");

*Reed*, 620 F2d at 712 (concluding that the trial court did not abuse its discretion when it denied the defendant's motion to sever where the evidence was "separate and distinct" and the "court carefully instructed the jury that it should consider each count separately and that it should segregate evidence" and "provided the jury with separate forms of verdict for each count").

As described above, however, when the legislature adopted federal joinder law, federal decisions had identified at least three theories of prejudice arising from joinder: (1) that the jury will confuse or cumulate the evidence; (2) that the defendant may be confounded in presenting conflicting defenses; and (3) that the jury will conclude that the defendant is guilty of one crime and therefore guilty of others. *Foutz*, 540 F2d at 736. Although "simple and distinct" evidence may mitigate prejudice under the first theory, it often will have no bearing on the second and does little to address the third.

As the court in *Foutz* emphasized, even though the "simple and distinct" inquiry may mitigate concerns about confusing and cumulative evidence, it "does not address itself, however, to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers that finding probative of [the defendant's] guilt of another." *Foutz*, 540 F2d at 738 n 5. In *Foutz*, the federal court concluded that the "simple and distinct" inquiry was inapplicable to the defendant's case because the defendant's theory of prejudice—that "the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition"— could not be mitigated by "simple and distinct" evidence. *Id*. at 736, 738. In rejecting the government's argument to the contrary, the court concluded that "[t]he reasons for the rule which the government invokes are largely inapplicable and the prejudice to the defendant, arising from the weakness of the government's one case and strength of the other, so marked that we cannot presume that the jury adhered to limiting instructions." *Id*. at 738. We agree with the court in *Foutz* that there are circumstances in which case-specific

prejudice caused by the admission of otherwise inadmissible propensity evidence is "substantially prejudicial" even if the evidence is simple and distinct.[13] *See State v. Skillicorn*, 367 Or 464, 478, 479 P3d 254 (2021) (explaining that character evidence can "(1) impair the opposing party's ability to present its case; (2) distract and confuse the factfinder; (3) prejudice the factfinder against a person; and (4) result in verdicts based on erroneous assumptions").

In sum, when the defendant moves to sever charges, the trial court must consider "whether the facts stated in the motion show the existence of prejudice" and, if so, "the appropriate form of relief." *Miller*, 327 Or at 629. At a minimum, that means that the theory of prejudice must describe more than the prejudice that is an inherent risk of joining charges. *Id*. at 634; *see also Reed*, 620 F2d at 712 (explaining that the "risks" of prejudice that the defendant identified "are present in any case in which there is joinder of even remotely similar offenses"). And that theory must describe prejudice related to the specific circumstances of the case. *Taylor*, 364 Or at 379; *Barone*, 329 Or at 217. Recognized theories of substantial prejudice include but are not limited to: (1) that the jury will confuse or cumulate the evidence; (2) that the defendant may be confounded in presenting conflicting defenses; and (3) that the jury will conclude that the defendant is guilty of one crime and therefore guilty of others. *Foutz*, 540 F2d at 736.

On review of the denial of a motion to sever, the reviewing court must determine, as a matter of law, whether the defendant suffered substantial prejudice because of joinder. *Taylor*, 364 Or at 378; *Barone*, 329 Or at 217. And we must review for an abuse of discretion any relief that the trial court provided or declined to provide to address the substantial prejudice. *Miller*, 327 Or at 629.

---

[13] Although we find *Foutz*'s discussion of the "simple and distinct" inquiry persuasive, to the extent that *Foutz* could be understood as concluding that the defendant demonstrated prejudice solely on the basis that joint trials would result in the admission of evidence that would not be cross-admissible in separate trials, we emphasize that, in Oregon, categorically allowing severance when the evidence of unrelated charges would not be cross-admissible in separate trials "would undermine the legislature's policy choice to authorize joinder of unrelated charges for trial." *Miller*, 327 Or at 632.

D. *Defendant was not substantially prejudiced by joinder of the charges.*

Having described the appropriate framework in reviewing a claim of substantial prejudice under ORS 132.560(3), we now apply that framework. As explained above, defendant contends that the trial court erred in failing to recognize that the evidence the prosecutor initially described—predicted testimony that M came forward because she had "heard" that defendant had "done similar things to other women"—was "substantially prejudicial." Defendant's argument, however, relies on a view of the record that is in dispute. The state contends that the trial court could have understood that the state was not planning to offer the concerning testimony and further notes that, in fact, neither victim testified at trial that she had heard of defendant committing bad acts against other women.[14] As explained below, we agree with the state that the trial court could have understood that the predicted evidence would not include the testimony that defendant had identified as substantially prejudicial.

As described above, after defendant argued that he would be substantially prejudiced by testimony about similar uncharged bad acts, the prosecutor told the court that he "want[ed] to clarify just a couple of things with regard to the facts." He then consulted police reports and described the victim's reported explanations for coming forward as more generalized "concerns that the defendant, you know, may do this again in the future." He described M as explaining that, "if [she] can stop another woman" from being harmed by defendant, "then [she] wanted to do it." He also explained that M had told law enforcement that she wanted to report defendant's assault because she had heard that defendant was dating her friend and was concerned that defendant

---

[14] The Court of Appeals reasoned that its review was limited "to the state of the record at the time of the court's ruling on the motion to sever." *Delaney*, 314 Or App at 562 (internal quotation marks omitted). We have never expressly addressed whether review of a motion to sever is limited to the record created at the time of the motion, but neither party challenges that standard applied by the Court of Appeals. And we decline to unilaterally take up the question in this case, in part because the answer would not impact our conclusion that defendant was not substantially prejudiced by joinder—the trial record as a whole confirms that the state did not introduce the concerning testimony.

might harm that friend. But the prosecutor also described both victims as explaining that "[o]ne of the main reasons [for coming forward] is because of what he did to them." Defendant did not respond to the "clarification" or offer an alternative theory of substantial prejudice.

Defendant now insists, however, that the prosecutor never expressly disavowed his earlier representation of M's predicted testimony. In defendant's view, the record of anticipated prejudice from a joint trial must be understood as including testimony that M came forward because she had "heard" that defendant had "done similar things to other women." And defendant's argument that he demonstrated substantial prejudice depends on that view of the record.

But the prosecutor's representations about the expected evidence can be understood in multiple ways. The question of whether the prosecutor was clarifying that he did *not* expect M to offer the concerning testimony was a preliminary question that the trial court needed to answer before determining whether defendant would be substantially prejudiced by the expected testimony. In other contexts, we assume that the trial court resolved preliminary questions in the light most favorable to its legal ruling, and we accept the trial court's resolution of a preliminary question if there is evidence to support it. *See, e.g.*, *State v. Turnidge (S059155)*, 359 Or 364, 404, 374 P3d 853 (2016), *cert den*, 137 S Ct 665 (2017) (explaining that, in the motion to suppress context, this court is "bound" to view the record "in the light most favorable to the trial court's ruling" with respect to preliminary questions about the historical circumstances); *State v. Cunningham*, 337 Or 528, 539-40, 99 P3d 271 (2004) (explaining that this court accepts "reasonable inferences and reasonable credibility choices that the trial court could have made" when reviewing the trial court's resolution of preliminary factual questions in the admissible-evidence context). We are unwilling to apply a different standard of review to the dispositive preliminary question here.

In sum, the trial court did not err in rejecting defendant's theory of substantial prejudice because the record permitted the court to infer that the state would not in fact offer the identified prejudicial evidence. Because defendant

was not substantially prejudiced by joinder, the trial court did not abuse its discretion when it denied defendant's motion to sever. Accordingly, we affirm.[15]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[15] Defendant asks this court to adopt factors to guide the trial court in exercising its discretion under ORS 132.560(3). Because we conclude that defendant was not substantially prejudiced by joinder of the charges, we decline to do so.