No. 554 June 18, 2025 381

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY ZANE HEWARD,
*Defendant-Appellant.*

Linn County Circuit Court
21CR61943; A179016

Rachel Kittson-MaQatish, Judge.

Submitted April 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for two counts of second-degree robbery, ORS 164.405 (Counts 1 and 3), and two counts of second-degree theft, ORS 164.043 (Counts 2 and 4). He raises five assignments of error. As explained below, we affirm.

Because defendant's assignments of error implicate different standards of review, we address each assignment separately and state the relevant facts in each discussion.

*Motion to sever.* In his first assignment of error, defendant argues that the trial court erred when it denied his motion to sever.

"On review of the denial of a motion to sever, [we] must determine, as a matter of law, whether the defendant suffered substantial prejudice because of joinder." *State v. Delaney*, 370 Or 554, 575, 522 P3d 885 (2022). We "examine the decision in the light of the arguments asserted and circumstances pertaining at the time the pretrial motion was made." *State v. Turner*, 153 Or App 66, 74, 956 P2d 215, *rev den*, 327 Or 317 (1998). "We limit our review to the state of the record at the time of the court's ruling on the motion to sever." *State v. Ross*, 336 Or App 428, 436, 561 P3d 141 (2024), *rev den*, 373 Or 444 (2025) (internal quotation marks omitted).

Here, the state alleged that defendant committed second-degree robbery and second-degree theft at a Fred Meyer store and that, two weeks later, defendant committed the same crimes at a Walmart store. Before trial, "[i]n anticipation of the defendant's motion to sever the counts," the state filed a motion arguing that the court should deny "any motion to sever." Specifically, the state argued even though "police obtained surveillance" from the Fred Meyer incident, they "did not know who the suspect was" until a Walmart victim "positively identified" defendant shortly after that incident. The state further argued that defendant's "words [were] very similar in both incidents" and that

> "[t]he incidents follow a similar pattern in that defendant is accused of stealing merchandise from those stores and upon leaving without paying for them, is confronted by loss

prevention. In both cases, defendant makes a statement along the lines of 'Is this worth dying over' to loss prevention. In one incident, he is described as reaching his hand in a way to indicate he had a weapon. In another, he is holding an item that could be used as a dangerous weapon."

Defendant subsequently filed a motion under ORS 132.560(3) to sever the Fred Meyer charges from the Walmart charges.[1] Defendant did not request a hearing.

In a letter opinion, the trial court denied defendant's motion, concluding that defendant "failed to prove *substantial* prejudice." (Emphasis in original.) The court found that the charges in both cases "involve[d] robbery and theft at retail stores" and that "[t]he counts are logically related, with similar and overlapping facts and committed within a close time frame."

We conclude that the trial court did not err when it denied defendant's motion. The Supreme Court has explained that "a defendant seeking severance under ORS 132.560(3) must identify a case-specific theory of substantial prejudice that is more than the prejudice that is inherent whenever joined charges allow the jury to hear that the defendant may have committed other bad acts." *Delaney*, 370 Or at 556. Here, defendant summarily argued that "the evidence of each incident would not be admissible at a separate trial on the other charges" and advanced general arguments about "various kinds of prejudice." We have concluded that such "[g]eneral arguments of prejudice that could be made in any case in which charges are joined are not sufficient to demonstrate substantial prejudice when the defendant fails to relate those arguments to the specific facts of the defendant's case." *State v. Tidwell*, 259 Or App 152, 155, 313 P3d 345 (2013), *rev den*, 355 Or 142 (2014).

Moreover, "even if we assume that the evidence in each case was not mutually admissible in the other," "[d]efendant's assignment of error fails." *Id*. The evidence in each incident "was sufficiently simple and distinct to mitigate the

---

[1] ORS 132.560(3) provides, in relevant part, that "[i]f it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

dangers created by joinder, particularly when considered in conjunction with the probable effectiveness of limiting instructions to the jury. [The] charges involved discrete incidents on separate days, and the evidence in each case was uncomplicated and supported by separate witnesses." *Id.* (internal quotation marks omitted); *see also State v. Gensler*, 266 Or App 1, 9, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015) (concluding that the trial court did not err in denying the defendant's motion to sever when "the charges against [the] defendant arose from different incidents that occurred at different times and places and involved different victims"). Indeed, the record at the time the trial court denied defendant's motion indicates that the incidents occurred two weeks apart and involved different witnesses.

Further, we are unpersuaded by defendant's argument that "the frightening nature of the charged conduct was likely to improperly influence the jury to find him guilty based on improper propensity reasoning." "It is not the court's job to resolve all possible evidentiary disputes at a pretrial hearing on a motion to sever." *State v. Delaney*, 314 Or App 561, 573, 498 P3d 315 (2021), *aff'd*, 370 Or 554 (2022).

> "The court's task in determining whether substantial prejudice would arise *as a result of joinder* is different than its task in determining whether certain statements would be admissible at trial, as a general matter. Although there may be some overlap in that assessment, certain propensity evidence may be inadmissible at trial, even if trying two cases together were appropriate."

*Id.* at 572-73 (emphasis in original). When as here, "the facts presented are sufficiently simple and distinct, substantial prejudice does not arise, and joinder is appropriate." *Id.* at 573. Consequently, "the trial court did not err in denying the motion to sever." *Id.*

*Amendment to indictment.* In his second and third assignments of error, defendant makes a combined argument and contends that the trial court erred when it granted the state's pretrial request to amend Counts 1 and 3, which alleged that defendant committed second-degree robbery. The state responds that the trial court permissibly amended

the indictment to correct a scrivener's error. We agree with the state's argument.

We review a trial court's decision to amend an indictment for legal error. *State v. Wimber*, 315 Or 103, 112-13, 843 P2d 424 (1992). A "[d]efendant has the constitutional right to be tried only for the specific criminal act as to which the grand jury handed down the indictment." *State v. Long*, 320 Or 361, 370 n 13, 885 P2d 696 (1994). If an error in an indictment "is of substance, the state may seek permission to resubmit the matter to the grand jury. If the error is of form only, the court may amend the indictment by interlineation." *Id.* at 369 n 14. When as here, the state identifies "a perceived error in form in the indictment," the Supreme Court has explained that the state should "advise the court" before trial that the indictment requires amendment. *Id.* "The court could then hear the parties' arguments on the issue and thereafter make a finding, which is what [Article VII (Amended), section 5(3), of the Oregon Constitution] actually contemplates, as to what had occurred, in order to alleviate any doubt." *Id.*

On the morning of trial, the prosecutor stated that, even though she had "correctly stated the law" to the grand jury, the state's "system typed up" a "scrivener's error" in Counts 1 and 3 and omitted the word "immediate" before "physical force."[2] The prosecutor then asked the court to amend the indictment by interlineation and to add "immediate" to those counts. In the alternative, the prosecutor argued that "the same grand jury that indicted is still sitting and they're here tomorrow," and that, if the state were to resubmit the matter to the grand jury, she would present only the same evidence as she did before.

After considering the parties' arguments, the trial court agreed to amend the indictment.

> "So, based on that argument then, in regards to the evidence and the information provided by the [prosecutor] and the fact that they would only be looking at whether or not

---

[2] Under ORS 164.405(1), a person commits second-degree robbery by committing third-degree robbery, ORS 164.395, and "[r]epresent[ing] by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon." In turn, third-degree robbery requires, among other elements, that the person "use[] or threaten[] the *immediate* use of physical force" while committing theft. ORS 164.395(1) (emphasis added).

to sign the bill and no additional evidence, I'll go ahead and allow us to proceed."

The court then explained:

"I'm going to go ahead and make this the Second Amended Indictment. *** I'll insert the word 'immediate' on Count 1. And in Count 3, I will also insert the word 'immediate' in the use of immediate physical force. And then I'm going to indicate on this indictment, 'Amended by the Court due to scrivener's error over the objection of defense.'"

We conclude that the trial court did not err. Here, the trial court was entitled to accept the prosecutor's explanation, at least where defendant did not dispute those representations below and did not point to contrary evidence. *See State v. Delaney*, 160 Or App 559, 562 n 3, 567, 984 P2d 282, *rev den*, 329 Or 358 (1999) (concluding that the trial court was "entitled to accept" the prosecutor's representation "that the disputed language in the indictment was the product of a scrivener's error" (internal quotation marks omitted)). In light of its handwritten interlineation on the amended judgment, "Amended by the Court due to scrivener's error," we presume that it found that "the indictment, as transcribed, erroneously expressed the grand jury's intent." *Id.* As a consequence, we conclude that the trial court did not err in amending the indictment because the amendment was "for the express purpose of prosecuting the exact crime that the grand jury had in mind." *Long*, 320 Or at 371-72 (internal quotation marks omitted).

Arguing for a different result, defendant argues that, under *State v. Burnett*, 185 Or App 409, 60 P3d 547 (2002), "[t]he amendment impermissibly added an essential element to the indictment, which violated defendant's right to have the grand jury determine whether to issue robbery charges." We disagree with defendant's argument. In *Burnett*, the defendant appealed the denial of his "motion in arrest of judgment, arguing that the indictment failed to allege [an] element." *Id.* at 412. The state responded that "the elements left out of the indictment were not material and that, even if they were, the purposes of an indictment were nevertheless satisfied because [the] defendant was apprised of the allegations against him and the jury was

properly instructed." *Id.* at 413. We concluded that the indictment did "not satisfy the requirement that a defendant be tried only for an offense that is based on facts found by the grand jury indicting against him." *Id.* at 416 (internal quotation marks omitted). In contrast, here, the prosecutor brought the omission to the trial court's attention, stated that she had accurately stated the law to the grand jury, and that the omission was a "scrivener's error." The court found that the omission was a scrivener's error. Thus, this case is distinguishable from *Burnett* in that the amendment did not "impermissibly circumvent or supersede the constitutional function of the grand jury by subjecting defendant to trial and conviction based on facts materially different from those presented to the grand jury." *Delaney*, 160 Or App at 567. The trial court did not err.

*The state's closing argument.* In defendant's fourth assignment of error, he argues that the trial court plainly erred "when it allowed the prosecutor to misstate the reasonable-doubt standard."

An error is plain when it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). To determine whether a prosecutor's statements in closing argument amount to reversible plain error, we consider first whether the statements were obviously improper or impermissible. *State v. Chitwood*, 370 Or 305, 314-15, 518 P3d 903 (2022); *see also State v. Perez*, 373 Or 591, 606-07, __ P3d___(2025) (explaining that the "preliminary question" in determining whether a prosecutor's challenged statements rise to the level of plain error is whether the defendant has demonstrated that it is "obvious and beyond reasonable dispute that the prosecutor's comments were improper").

Defendant argues that the following portion of the state's closing argument was improper:

"[THE PROSECUTOR]:   I will ask you to do one thing though, and that is to remember the oath you took at the beginning of this trial. There's a good chance you probably don't; it was a while ago, it seems like a week ago now. It is easy sometimes when jurors go back to deliberate

and there are multiple charges to compromise. Let's say
you are discussing the Fred Meyer incident, and *maybe
you're doubting if that's the same guy or not*, and you think
to yourselves, 'Well, I think he did the Walmart incident,
why don't we just say guilty on that and not guilty on this?'
*Please do not engage in that kind of negotiation over crim-
inal charges that impact victims.* The oath you took asked
you to do this, in that oath it says if you promise to a true
verdict give. A true verdict give. Not a compromised ver-
dict, not an easy verdict, but a true verdict, which means *if
there's any inclination to do that whatsoever*—because you
know what, it's almost 5:00, people want to go home and
maybe they don't want to come back tomorrow, or whatever
the situation may be. Please don't do that. Your job is to
give a true verdict, and so work at it to get to the truth of
what happened in both of these incidents and please give
us the truth in your verdict."

(Emphasis added.)

Considering those statements in context, we con-
clude that they were not obviously improper. *See State v.
Smith*, 334 Or App 89, 94, 554 P3d 817 (2024) (considering
the prosecutor's remark in "the entire context of the prosecu-
tor's challenged statements" to determine if the remark was
improper). As discussed above, the state alleged that defen-
dant committed the same crimes at a Fred Meyer store and
later at a Walmart store. At trial, a Walmart loss prevention
employee testified that he confronted defendant in the store,
provided police a description of defendant's appearance and
vehicle, and later identified defendant to police. However,
police did not identify defendant as the Fred Meyer sus-
pect until *after* they arrested him for the Walmart crimes,
which occurred two weeks later. Thus, when considered in
context, the prosecutor's statements emphasized that even
if the evidence of defendant's identity was stronger in the
Walmart incident than in the Fred Meyer incident, the jury
was required to fully consider the evidence of each incident.

Moreover, even if the statements were improper,
they do not meet the standard for plain-error review because
they could have been adequately addressed by a curative
instruction. *See State v. Durant*, 327 Or App 363, 365, 535
P3d 808 (2023) (explaining that "prosecutorial statements

that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial" (emphasis in original)). The trial court did not plainly err.

*Second-degree theft.* In his fifth assignment of error, defendant argues that the trial court plainly erred when it "omitt[ed] a culpable mental state as to the value of the stolen property on Count 4," ORS 164.045.[3] The state concedes that the trial court plainly erred but argues that we should not exercise our discretion to correct the error.

As noted above, an error is plain when it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *Vanornum*, 354 Or at 629. "[T]he lack of any culpable mental state in the value-of-stolen-property-instruction constitutes plain error." *State v. Baker*, 325 Or App 367, 369, 528 P3d 812 (2023). However, even when an error is plain, we must "determine whether to exercise [our] discretion to review the error." *Vanornum*, 354 Or at 630. "That discretion entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case." *Id.*

> "Even if an error does not qualify as harmless, our assessment of where it falls on the spectrum of likelihood of having affected the verdict can be an important consideration to the exercise of discretion. The likelihood that the error affected the outcome goes to its gravity and to the ends of justice."

*State v. Horton*, 327 Or App 256, 264, 535 P3d 338 (2023) (internal quotation marks omitted) (considering the defendant's plain-error challenge to the trial court's failure to instruct the jury "on the mental-state requirement for the value element of first-degree criminal mischief"). "We have not treated failure to instruct on a mental-state element as the type of plain error that is so grave as to merit the exercise of discretion in every case." *Id.* at 266.

---

[3] Under ORS 164.045(1), a person commits second-degree theft when, among other requirements, "[t]he total value of the property in a single or aggregate transaction is $100 or more and less than $1,000."

Having considered the "particular facts" of this case, we decline to exercise our discretion to review the error. *Id.* ("Each case * * * must necessarily be decided on its own particular facts."). Assuming a culpable mental state of criminal negligence, we conclude that the evidence was legally sufficient "to prove that defendant acted with criminal negligence with respect to [his] awareness that the value of the stolen property was at least [$100]."[4] *State v. Boggs*, 324 Or App 1, 6, 524 P3d 567 (2023). In Count 4, the state alleged that defendant committed second-degree theft by stealing Fred Meyer property "of the total value of $100 or more." At trial, the court admitted into evidence surveillance video that showed defendant carrying numerous clothing items in both arms. A loss prevention employee testified that he observed defendant visit "a few departments," "load a large quantity of apparel merchandise into his arms," "select[] a dog leash and a yard spike," "[find] an empty cart and then put everything that he was holding into the cart." Defendant later parked the cart, "grabbed most of the merchandise, again with his arms, and then proceeded to leave the store." In addition, the assistant store manager testified that he saw defendant outside of the store with "stuff in both hands," including "a stack of clothing" and the "large metal dog spike." The loss prevention employee estimated that the value of the stolen items was "over $460." That evidence was legally sufficient to support a finding that defendant "acted with criminal negligence with respect to [his] awareness that the value of" the numerous clothing items and dog supplies "was at least [$100]." *Boggs*, 324 Or App at 6.

Seeking a different result, defendant contends that the loss prevention employee's testimony indicates that defendant "grabb[ed] the merchandise 'without regard' to the price tags" and that the testimony "could fail * * * to persuade[]" a juror that defendant acted with criminal negligence with respect to the value of the items. We disagree with defendant's argument. "The key questions under

---

[4] ORS 161.085(10) provides:

"Criminal negligence * * * means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

negligence are ones of *risk* and *awareness* of that risk." *State v. Acree*, 338 Or App 98, 102, 565 P3d 60 (2025) (emphases in original). "[T]he awareness is *not* of the value of the items themselves; it is of the *risk*—the possibility or chance—that the aggregate value of the items exceeded the value limit in the statute." *Id.* at 103 (emphases in original). Consequently, "viewing the record as a whole and in the context of the jury's other findings, even though there is *some* likelihood that the verdict would have been different (such that the error was not legally harmless), it is an extremely low likelihood." *Horton*, 327 Or App at 266 (emphasis in original). "[W]e are ultimately unpersuaded that the gravity of the error, the ends of justice, or the other relevant considerations warrant exercising our discretion to reverse" defendant's conviction on Count 4. *Id.*

Affirmed.