Argued and submitted September 19, 2016, affirmed August 23, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICOLE ANNE GARLITZ,
*Defendant-Appellant.*

Washington County Circuit Court
C132441CR; A158866

404 P3d 1090

Kirsten E. Thompson, Judge. (Supplemental Judgment)

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Egan, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.

**LAGESEN, J.**

For her financial abuse of an elderly man and her fraudulent use of bank cards that she obtained under his name, defendant pleaded guilty to one count of aggravated identity theft, ORS 165.803, and one count of first-degree criminal mistreatment, ORS 163.205. The trial court sentenced her to pay a compensatory fine in the amount of $156,565.82 and to a term of incarceration and other monetary obligations. On appeal, defendant assigns error to the trial court's imposition of the compensatory fine. She argues that the trial court erred in imposing a compensatory fine for losses incurred outside the time period covered by her guilty plea, and in imposing a fine that exceeds the statutory maximum fine for first-degree criminal mistreatment. We review for legal error, *State v. Neese*, 229 Or App 182, 184, 210 P3d 933 (2009), *rev den*, 347 Or 718 (2010), and affirm.

The relevant facts are largely procedural and not disputed on appeal. As the state explained at defendant's plea hearing, the factual basis for defendant's plea is as follows. In late 2011, defendant, along with codefendant Kelly Dresser, approached O, an elderly man with dementia, in a Fred Meyer parking lot after witnessing him looking for his car. Defendant and Dresser obtained O's phone number and became friendly with him. They eventually moved into his home and took over his care, including payment of his bills. They also began to use his money for their own purposes, filling out and cashing his checks—some of which O signed, and some of which defendant and Dresser forged. Defendant and Dresser also obtained and used bank cards under O's name, without his understanding or consent. In all, defendant and Dresser amassed $156,565.82 in debt in O's name. He lost $110,130.91 personally, and four different banks reported the remainder as losses that they had written off as resulting from fraud. Defendant and Dresser's appropriation of O's money and identification began around October 2011, and ended in October 2013 when they were arrested and each charged with one count of criminal mistreatment in the first degree, one count of aggravated theft in the first degree, and two counts of aggravated identity theft.

Thereafter, defendant entered a plea agreement under which she agreed to plead guilty to two of the charges: criminal mistreatment (Count 1), a Class C felony, and aggravated identity theft (Count 4), a Class B felony. The parties stipulated to concurrent sentences of six months' and 15 months' imprisonment for those charges, respectively. Defendant initially was sentenced to pay two $200 fines, one for each count, and the trial court indicated that those financial obligations would increase after a later hearing at which the court would ascertain the economic losses sustained by O and the banks affected by defendant's conduct, so that such amounts could be imposed as a compensatory fine under the mechanism provided by ORS 137.101(1).[1] In exchange for defendant's plea, the state agreed to dismiss the remaining counts and not charge defendant for additional thefts arising out of her relationship with O.

After the subsequent hearing, the court issued a letter opinion in which it found that the conduct of defendant

---

[1] ORS 137.101(1) provides:

"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, unless the issue of punitive damages has been previously decided on a civil case arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims."

Although the court referred to the later hearing as a "restitution" hearing, at the initial plea hearing, the court informed the parties that its intention was to use the compensatory fine mechanism, rather than restitution, to provide redress to the victims. The court stated:

"It would be this Court's intention that once you got a certain figure involved, because the parties are agreeing that the money that has already been forfeited, because of the repeated violations over the release agreements, I assume you guys are asking the Court to reinstate those, and it would be this Court's *** recommendation [to the presiding judge] that those are reinstated, that once a figure is determined as far as restitution goes, that it end up being a compensatory fine. And that then these funds are used to pay the compensatory fine. It'd be better for the victim to get this money sooner than later, in other words, while he is still alive."

Neither defendant nor the state objected to the trial court's use of this procedure to impose a compensatory fine and the correctness of that procedure is not at issue in this appeal. Notwithstanding the court's stated intention to use the compensatory fine mechanism to provide compensation to defendant's victims, the court and the parties continued to refer to the subsequent hearing as a restitution hearing.

and Dresser had caused losses to O and various banks in the amount of $156,565.82, and entered a supplemental judgment stating that defendant was jointly and severally liable with Dresser for a compensatory fine in the amount of $156,565.82. Neither the court's letter opinion nor the supplemental judgment identify on which of defendant's two convictions the trial court intended to impose the fine; however, the case register indicates that the fine was assigned to defendant's conviction on Count 1 for criminal mistreatment, a Class C felony for which the maximum fine authorized by ORS 161.625(d) is $125,000.[2]

Defendant appeals, challenging the compensatory fine on two grounds. In her first assignment of error, she argues that the trial court erred in awarding a compensatory fine exceeding the damages incurred by O and the banks within the date range set out by her guilty plea. Specifically, she contends that the fine imposed was in excess of that which is permissible, because not all of the fine amount stemmed from the conduct to which defendant admitted when she entered her guilty pleas. In other words, in defendant's view, a fine designated as compensatory cannot exceed the economic losses in fact caused by the specific conduct to which defendant admitted. In her second assignment of error, defendant contends that the court plainly erred by imposing a compensatory fine on Count 1 that exceeds the statutory maximum fine permitted for a Class C felony.

Defendant's first assignment of error misapprehends the operation of the compensatory fine statute. Under ORS 161.625, a sentencing court is authorized to impose a fine upon a defendant as penalty for the commission of classified felonies. ORS 137.101, in turn, authorizes a sentencing court to direct that some or all of that fine money be

---

[2] ORS 161.625(1) provides:

"A sentence to pay a fine for a felony shall be a sentence to pay an amount, fixed by the court, not exceeding:

"(a) $500,000 for murder or aggravated murder.

"(b) $375,000 for a Class A felony.

"(c) $250,000 for a Class B felony.

"(d) $125,000 for a Class C felony."

used to compensate the victims of the defendant's crimes if those victims have suffered damages for which they would have a civil action against the defendant as a result of those crimes. *State v. Moore*, 239 Or App 30, 34, 243 P3d 151 (2010) (explaining that ORS 137.101 "does not itself authorize a court to impose a fine, compensatory or otherwise[,]" but simply authorizes the court to "order the state to share a portion of any fine that the court imposes with the victim or victims of the crime of conviction").

In other words, ORS 137.101 is simply a distribution mechanism that permits a sentencing court to redirect money, which ordinarily would be paid to the state, to certain private parties. Although a sentencing court's authority to redirect that money is not unlimited, the amount of the compensatory fine need not be calibrated to—or limited to— the economic damages[3] sustained by the victim: "The statute does not tie the *amount* of the compensatory fine to the amount of economic damages that a victim has suffered." *State v. Grismore*, 283 Or App 71, 76, 388 P3d 1144 (2016) (emphasis in original). Rather, as we explained in *Grismore*,

> "[t]he only requirements that must be met for a trial court to impose a compensatory fine are that the injured victim have a remedy by civil action for the injuries that he or she suffered as a result of defendant's crime and that punitive damages have not been previously decided in a civil case arising out of the same act and transaction."

*Id.* (internal quotation marks omitted).

Here, those minimal requirements were met. It is not disputed that defendant's conduct caused O and the banks to suffer economic damages that they could seek to recover from defendant in a civil action, and it is not disputed that the issue of punitive damages for defendant's conduct has not previously been decided in a civil case. Thus, under

---

[3] By definition, a "victim" under ORS 137.101 is "[t]he person or decedent against whom the defendant committed the criminal offense, if the court determines that the person or decedent has suffered or did suffer economic damages as the result of the offense." ORS 137.103(4)(a). Thus, a person must have suffered economic damages in order to receive a compensatory fine under ORS 137.101 because the statute, by its terms, only permits such fines to be directed to a "victim" of a defendant's crimes. *State v. Alonso*, 284 Or App 512, 516-17, 393 P3d 256 (2017).

*Grismore*, the trial court was permitted to impose whatever penalty fines were authorized by ORS 161.625 for defendant's two convictions and then, under ORS 137.101, direct that some or all of those monies be paid to the victims of defendant's offenses without determining the precise value of damages caused by defendant's conduct. Defendant's argument that the trial court erred when it did not restrict the compensatory fine to the specific damages that the victims suffered during the time period covered by defendant's plea therefore necessarily fails.

Turning to defendant's second assignment of error, the issue is whether the trial court erred when it imposed a total fine in excess of the statutory maximum for defendant's conviction of criminal mistreatment. Because defendant did not raise this issue below, she asks that we review for plain error and exercise our discretion to correct the alleged error. As we explain, we agree with defendant that the alleged error is plain, but we decline to exercise our discretion to correct the error.

In order for this court to reach an unpreserved assignment of error, that error "must be one of law; * * * must be apparent, *i.e.,* the point must be obvious, not reasonably in dispute; and * * * must appear on the face of the record, *i.e.,* the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 381-82, 823 P2d 956 (1991) (citations and quotation marks omitted).

The assigned error in question involves statutory maximums for penalty fines, which are established by ORS 161.625. There are two provisions under which a court can ascertain the statutory maximum for a penalty fine imposed for a classified felony. Under ORS 161.625(1), a court can look to the classification of the crime; a Class B felony can result in a fine of up to $250,000, and a Class C felony fine can rise to $125,000. Alternatively, a court can rely on ORS 161.625(3), which establishes that, "[i]f a person has gained money or property through the commission of a felony, then upon conviction thereof the court * * * may sentence the defendant to pay an amount, fixed by the court, not

exceeding double the amount of the defendant's gain from the commission of the crime."

In this case, defendant pleaded guilty to a Class B felony (Count 4) and a Class C felony (Count 1). The court sentenced defendant to pay a fine of $156,565.82, and the case register reflects that the fine was assigned to defendant's conviction for the Class C felony. That amount plainly exceeds the $125,000 maximum permitted by ORS 161.625(1). Careful consideration of the damages incurred within the date range of defendant's guilty plea—relevant here, unlike within the first assignment of error—reveals that those losses amount to $43,195.49.[4] That figure doubled to $86,390.98, pursuant to ORS 161.625(3), plainly falls well below the amount of the compensatory fine imposed in this case. Because the fine imposed plainly exceeds that permissible for defendant's conviction on Count 1, the trial court plainly erred in imposing it on Count 1.

The next question for us is "whether to exercise our discretion to correct the error." *State v. Gray*, 261 Or App 121, 131, 322 P3d 1094 (2014). To make that determination, we consider "the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes*, 312 Or at 382 n 6. In addition, when evaluating whether to correct a plain error in sentencing, we consider "whether a defendant encouraged the trial court's imposition of the erroneous sentences, the possibility that the defendant made a strategic choice not to object to the sentences, the role of other sentences in the case, and the interests of the judicial system in avoiding unnecessary repetitive sentencing proceedings." *State v. Smith (A133917)*, 223 Or App 85, 89, 195 P3d 435, *rev den*, 345 Or 503 (2008); *see also State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007) (so stating).

While the absence of evidence of certain factors— evidence that defendant's failure to object to the sentence was a strategic choice, for example, or that defendant even

---

[4] This figure resulted from calculations based on the dated transactions in the state's Exhibit B.

encouraged the judge's choice—might weigh in favor of our exercise of discretion, the "interest of the judicial system in avoiding unnecessary repetitive sentencing proceedings," *Fults*, 343 Or at 523, weighs against our exercise of discretion where we are confident from the record that the trial court would impose the same sentence on remand. *State v. Jenniches*, 187 Or App 658, 664-65, 69 P3d 771, *rev den*, 335 Or 578 (2003) (sentencing errors deemed harmless and the defendant not prejudiced, as trial court certain to impose the same term of 117 months in prison on remand); *State v. Quintero-Martinez*, 220 Or App 497, 503, 188 P3d 350, *rev den*, 345 Or 318 (2008) (discretion not exercised where the defendant was sure to be resentenced to an aggregate of 120 months in prison, regardless of absence of other factors); *State v. Saechao*, 256 Or App 369, 373, 300 P3d 287 (2013) (remanding for resentencing where we could not infer that "the trial judge intended to keep defendant in prison for a certain period of time"); *State v. Marshall*, 219 Or App 511, 518, 183 P3d 241(2008) (trial court could impose same sentence on remand, but was not certain to do so, so error not harmless). We have applied this rule in circumstances in which sentences for individual convictions may need adjustment as the result of an identified plain error, but the same sentence could be achieved by shifting part of a sentence for one conviction to another. *See Smith*, 223 Or App at 90 (facts not found to support consecutive sentencing on one count as ordered by trial court, but, on remand, trial court could and would apply consecutive sentencing on other counts to achieve the same result); *State v. Calderon-Ortiz*, 222 Or App 1, 8, 191 P3d 808 (2008), *rev den*, 345 Or 618 (2009) (same circumstances and holding). Ultimately, this approach serves to protect the judiciary from unnecessary burden, because, in such cases, "remand for resentencing would be gratuitous[,]" and declining to review such errors does not prejudice defendants. *State v. Muyingo*, 225 Or App 156, 161, 200 P3d 601, *adh'd to on recons*, 226 Or App 327, 203 P3d 365, *rev den*, 346 Or 364 (2009).

In this case, it is those considerations—the need for efficiency and the lack of prejudice to defendant—that lead us to decline to exercise our discretion to correct the trial court's error in imposing the compensatory fine on Count 1.

It is clear that the trial court could impose the same $156,565.82 fine on remand, simply by reallocating all or part of it to defendant's other conviction of aggravated identity theft. That conviction, a Class B felony, could subsume the $31,565.82 that exceeds the maximum fine allowable for the Class C felony. Alternatively, the trial court could shift the entire fine to the Class B felony, because the trial court is authorized to impose a fine of up to $250,000 for a Class B felony. ORS 161.625(1)(c).

Not only could the trial court sentence defendant to the same fine on remand, but it would almost certainly do so. Extensive evidence was presented during the compensatory fine hearing to establish the losses sustained by O and relevant financial institutions. In the trial court's letter opinion assessing the fine, the court tied the fine amount to victims' losses, noting that

> "[t]he evidence was overwhelming that the charges incurred and monies spent were without permission of [O], and were not for his benefit. On the contrary, the expenses caused him economic harm, and the overall pattern of behavior of the defendants caused emotional harm to [O], and interfered with his family relationships."

As a result, the court awarded the exact amount requested by the state. Under those circumstances, we have no doubt that a remand for resentencing ultimately would not result in a change in the fine that the court imposed, and that the trial court would simply assign the fine to the conviction on which it was authorized or otherwise allocate it between defendant's two convictions.

One other point bears mentioning. On this record, it appears to us that the error is clerical in nature. As noted, neither the trial court's letter opinion nor its supplemental judgment assigned the compensatory fine to one or the other of defendant's convictions, and nothing in the record suggests that the court intended the fine to attach to the conviction for which it was not authorized rather than to the conviction for which it was authorized. Rather, it appears that the clerk simply erroneously docketed the fine as part of defendant's sentence on the wrong conviction. In terms of judicial efficiency, we think this sort of docketing error

is more appropriately—and efficiently—corrected by the trial court pursuant to motion under ORS 138.083, than by our exercise of discretion on plain error review. *See State v. Chesnut*, 283 Or App 347, 351-52, 388 P3d 1237 (2017) (declining to exercise discretion to correct what appeared to be a clerical error where the error easily could have been avoided if the defendant had raised the issue below and also was the type of error that easily could be corrected under ORS 138.083).

Affirmed.