428 November 27, 2024 No. 847

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL STUART ROSS,
*Defendant-Appellant.*

Washington County Circuit Court
18CR32198, 19CR45558; A178503 (Control), A178504

Theodore E. Sims, Judge.

Submitted July 24, 2024.

Frances J. Gray filed the briefs for appellant. Michael Stuart Ross filed the supplemental brief *pro se*. Francis J. Gray filed the supplemental brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from judgments in a consolidated case in which a jury convicted him of second-degree murder, first-degree attempted murder, second-degree assault, and unlawful use of a weapon (the homicide case); and two counts of solicitation to commit first-degree murder (the solicitation case). Defendant argues that the trial court erred in denying his motion to sever, that the trial court erred in excluding evidence of a witness's "malingering," and that the trial court plainly erred in imposing compensatory fines on the second-degree murder and first-degree attempted murder convictions. Finally, in a *pro se* assignment of error, defendant challenges numerous rulings related to objections and motions.

We conclude that: (1) the trial court did not err in denying defendant's motion to sever because the cases were properly consolidated and defendant did not suffer substantial prejudice; (2) the trial court did not err in excluding evidence of the witness's malingering because that evidence was not admissible as a "true plan" under OEC 404(3); and (3) the trial court plainly erred in imposing compensatory fines, but we decline to exercise our discretion to correct the error. We further conclude that defendant's *pro se* supplemental claim of error fails to establish any error and reject it without further discussion. Accordingly, we affirm.

## MOTION TO SEVER

In one indictment, the state charged defendant with second-degree murder, attempted first-degree murder, two counts of second-degree assault, and two counts of unlawful use of a weapon, alleging that defendant stabbed and beat his mother to death and attempted to kill his brother, A, by stabbing him and beating him with a pipe. While defendant was in jail awaiting trial on those charges, the state charged him in a separate indictment with two counts of solicitation to commit murder, alleging that he offered a fellow inmate, Hwang, money to kill defendant's two brothers, A and D, so that his brothers could not testify against him in the homicide case.

The state moved to consolidate the two indictments for trial, arguing that consolidation was proper under

ORS 132.560(1)(b)(C), which allows consolidation when the offenses are connected by a common scheme or plan. The state argued that consolidation was permissible because the indictments were "logically related" and the proof between the two cases was "entirely overlapping." *See State v. Dewhitt*, 276 Or App 373, 383, 368 P3d 27, *rev den*, 359 Or 667 (2016) ("[J]oinder under ORS 132.560(1)(b)(C) is appropriate if 'the joined counts [or charges] are logically related, and there is a large area of overlapping proof' between them." (Quoting *State v. Johnson*, 199 Or App 305, 317, 111 P3d 784, *rev den*, 339 Or 701 (2005).)).

The state represented that it intended to present evidence that defendant solicited Hwang to kill his brothers "so that they could not be witnesses against him at his murder trial." Thus, in the state's view, evidence from the homicide case would be admissible in the solicitation case to prove defendant's motive for attempting to hire Hwang to kill adverse witnesses expected to testify in the homicide case. The state also argued that evidence from the solicitation case would be admissible in the homicide case because it is "highly probative of his guilt." Defendant did not take a position on the consolidation motion, and the trial court granted the motion.

Ten months later, defendant filed a notice of self-defense in the homicide case and moved to sever the two cases. The state had focused on ORS 132.560(1)(b)(C) in its original consolidation motion and defendant similarly focused on that provision. Defendant argued that consolidation was improper under that provision because the charges "do not contain large areas of overlapping evidence." *See State v. Thompson*, 328 Or 248, 255-57, 971 P2d 879, *cert den*, 527 US 1042 (1999) (reviewing trial court's denial of defendant's motion to sever on the grounds that the charges were improperly joined).

Defendant also argued that he would suffer substantial prejudice if the charges were consolidated. *See* ORS 132.560(3) ("If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever

other relief justice requires."). Defendant argued generally that "where a defendant wishes to testify as to one charge, but not to another, severance is proper"; that because evidence "would not be mutually admissible in separate trials," the jury might conclude that defendant is guilty of one offense based on the evidence presented of another offense; and that the evidence is not "so sufficiently simple and distinct that it mitigates the dangers created by joinder."

The state opposed the motion, relying on the arguments that it made in its motion to consolidate, namely that consolidation was appropriate because the indictments were logically related and the proof between the two cases was largely overlapping, and that defendant would not suffer substantial prejudice because evidence from both cases would be admissible in separate trials.

The trial court concluded that the indictments were properly consolidated. In doing so, the court relied on ORS 132.560(1)(b)(A), which allows consolidation when the offenses are "[o]f the same or similar character."[1] In reaching that conclusion, the court considered "the temporal proximity of the acts, similarities in the elements of the offenses, whether the trials will involve similar evidence or evidentiary overlap, and whether the charges involved the same or similar victim, intent, modus operandi, or acts." *State v. Gialloreto*, 301 Or App 585, 591, 457 P3d 1105 (2019), *rev den*, 366 Or 827 (2020) (outlining factors relevant to joinder based on ORS 132.560(1)(b)(A)). The trial court determined that "[t]he charges are very similar to each other and involve the same victim[.] *** Evidence of the solicitation will be admissible in the murder and attempted murder trial to prove intent, motive, and to refute self-defense." With respect to prejudice, the trial court determined that "there is little danger of unfair prejudice to the defendant by joining these trials because evidence in one case will be admissible in the other. Either way, the jury will hear the facts in both cases." Based on those determinations, the trial court denied defendant's motion to sever.

---

[1] The state had cited that provision in its motion to consolidate but had not provided an argument in support of why consolidation was appropriate under that provision.

Prior to testifying, defendant renewed his motion to sever, arguing that consolidation deprived him of his right to choose to testify in the homicide case and to remain silent in the solicitation case, and that "it would be in [defendant's] best interests to testify in the homicide, but not his best interest to testify in [the] solicitation case." The state reiterated the reasons that the court initially denied defendant's motion to sever and argued that, if defendant testified about the homicide case, "the state would certainly be entitled to cross-examine him about motive and about the things he did later to suggest his consciousness of guilt." The court denied defendant's motion.

Defendant appeals, arguing that the trial court erred in denying his motion to sever because (1) the trial court incorrectly concluded that the cases satisfied the requirements for consolidation set out in ORS 132.560(1)(b) and (2) the trial court incorrectly concluded that severance was not warranted because defendant would not suffer substantial prejudice from the consolidation.[2] *See State v. Brown*, 326 Or App 46, 49, 531 P3d 178, *rev den*, 371 Or 332 (2023) (explaining that a defendant may challenge the consolidation of cases by moving to sever, arguing that the requirements for consolidation are not met and/or that the defendant is substantially prejudiced by consolidation).

So framed, we begin with the question whether the trial court properly consolidated the charging instruments, which is a legal determination that we review for errors of law. *Dewhitt*, 276 Or App at 380. Under ORS 132.560(2), a court may consolidate two or more charging instruments if the charges meet any of the statutory bases for joinder listed in paragraph (1)(b), which provides that:

"Two or more offenses may be charged in the same charging instrument in a separate count for each offense if

---

[2] In two separate assignments of error, defendant argued that the trial court erred in (1) consolidating the homicide and solicitation cases, and (2) denying the motion to sever. Based on defendant's combined argument, we understand his assignments of error to be a single challenge to the trial court's denial of his motion to sever, in which he argued that the cases were not properly consolidated and that he suffered substantial prejudice. *See Dept. of Human Services v. R. H.*, 320 Or App 383, 387, 512 P3d 1279 (2022) ("We take a pragmatic approach to interpreting assignments of error[.]").

the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)   Of the same or similar character;

"(B)   Based on the same act or transaction; or

"(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

That statute "is to be broadly construed in favor of initial joinder." *Dewhitt*, 276 Or App at 382 (internal quotation marks and citation omitted).

At the outset, we note that the parties focus on different parts of ORS 132.560. For his part, defendant argues that the trial court erroneously applied the standard under subparagraph (1)(b)(A) (the provision upon which the trial court relied in denying defendant's motion to sever). In contrast, the state argues that the trial court's ruling was correct under subparagraph (1)(b)(C). Because the trial court applied the standard under subparagraph (1)(b)(A), and we conclude that the charging instruments were properly consolidated under (1)(b)(A), we do not reach the state's arguments concerning (1)(b)(C) except insofar as they are relevant to our analysis under (1)(b)(A).[3]

As noted above, in determining whether consolidation is permitted under ORS 132.560(1)(b)(A) ("same or similar character"), "we consider factors such as the temporal proximity of the acts, similarities in the elements of the offenses, whether there will be similar evidence or evidentiary overlap, and whether the charges involve the same or similar victims, locations, intent, modus operandi, or acts." *Gialloreto*, 301 Or App at 591 (internal quotation marks omitted). Here, the factors that weigh in favor of consolidation include the involvement of a shared victim in both the homicide and solicitation cases—defendant's brother, A; the overlapping/common intent involved in both cases—defendant's intent to murder A; and, most significantly, the evidentiary overlap between the two cases.

---

[3] The standards for both subparagraphs include an "evidentiary overlap" factor, and thus certain of the state's arguments on appeal are relevant to our analysis.

As the trial court noted, evidence in the solicitation case—that defendant wanted Hwang to kill his brothers so that they could not be witnesses against him in the homicide case—would be admissible in the homicide case "to prove intent, motive, and to refute self-defense." *See* OEC 404(4) (evidence of other crimes, wrongs, or acts by the defendant is admissible if relevant and if its probative value is not substantially outweighed by its prejudicial effect); *see State v. Davis*, 372 Or 618, 633, 553 P3d 1017 (2024) (explaining that "the applicable subsection of OEC 404 that applies to acts of a defendant offered in a criminal trial is OEC 404(4)"). And as the state argues, that evidence would also be admissible as evidence of defendant's "guilty conscience." *See State v. Brown*, 300 Or App 192, 200, 452 P3d 482 (2019), *rev'd on other grounds*, 367 Or 220, 475 P3d 93 (2020) ("The nature and extent of the actions that defendant took to avoid capture bore on the extent to which the jury could infer his guilty knowledge."). Further, evidence in the homicide case would be admissible in the solicitation case to establish defendant's motive—that he solicited Hwang to kill his brothers so that defendant could avoid being convicted of the murder and attempted murder charges.

That evidentiary overlap, combined with both cases involving the same victim and the same intent, weigh in favor of consolidation such that we conclude that the trial court did not err in consolidating the two cases.[4]

Having concluded that the trial court properly consolidated the cases, we next address whether the trial court erred in concluding that defendant did not suffer substantial

---

[4] Defendant also argues that the trial court's ruling was "unfounded" because "it fail[ed] to account for *** whether evidence of the homicide case would be admissible in the trial of the solicitation case." *See* OEC 404(4) (evidence of other acts by the defendant is admissible if relevant and if it survives OEC 403 balancing). With respect to relevance, the state argued that evidence of the homicide case would be admissible in the solicitation case to prove defendant's motive. And we have previously held that a trial court is not required to conduct OEC 403 balancing before ruling on a motion to sever, reasoning that "to require a trial court to make such a determination at a pretrial stage deprives this court of the opportunity to consider the effect of the evidence in the context of the trial evidentiary record." *State v. Parker*, 119 Or App 105, 109, 849 P2d 1157, *rev den*, 317 Or 584 (1993). Accordingly, because the state offered a theory of relevance that the trial court considered in making its ruling, and because the court was not required to conduct OEC 403 balancing, its ruling was not "unfounded."

prejudice as a result of consolidation. Under ORS 132.560(3), severance of consolidated charges is permitted when a party establishes that it is "substantially prejudiced" by consolidation. A defendant "seeking severance under ORS 132.560(3) must identify a case-specific theory of substantial prejudice that is more than the prejudice that is inherent whenever joined charges allow the jury to hear that the defendant may have committed other bad acts." *State v. Delaney*, 370 Or 554, 556, 522 P3d 855 (2022). We review the trial court's conclusion with respect to whether a defendant has established substantial prejudice for errors of law. *Id.*

Here, the trial court determined that defendant would not be substantially prejudiced as a result of consolidation "because evidence in one case will be admissible in the other. Either way, the jury will hear the facts in both cases." In challenging that ruling, defendant offers two theories of substantial prejudice. First, defendant argues that the state's evidence in the homicide case was much stronger than the evidence in the solicitation case, and thus the homicide evidence would "bolster" the solicitation evidence. That is, defendant argues that the jury would conclude that because defendant was guilty of the murder and attempted murder charges, he is also guilty of the solicitation charges. *See id.* at 575 (one theory of substantial prejudice is that "the jury will conclude that the defendant is guilty of one crime and therefore guilty of others").

As the trial court noted, however, even if tried separately, evidence about the homicide would be admissible in the solicitation case to prove defendant's motive. Conversely stated, this is not a case where defendant suffered substantial prejudice because the jury heard evidence that would not have been admissible if tried separately and that evidence bolstered an otherwise weak case. *Cf. United States v. Lewis*, 787 F2d 1318, 1322-23, *opinion amended on denial of reh'g*, 798 F2d 1250 (9th Cir 1986) (severance was required where evidence of prior crimes was admissible for some but not all charges and the evidence of one joined charge was "sparse"); *United States v. Foutz*, 540 F2d 733, 738 (4th Cir 1976) (severance was required where, if defendant had been tried separately for each offense, evidence of one offense would

not have been admissible at the trial for the other offense); *Delaney*, 370 Or at 569-73 (citing federal cases decided before 1989 in analysis of substantial prejudice standard because "it is undisputed" that, in 1989, the legislature intended to adopt the federal approach to joinder and severance). Thus, the trial court correctly ruled that, because the evidence from the homicide case would be admissible in the solicitation case if tried separately, defendant did not suffer substantial prejudice as a result of consolidation.

Defendant's second theory of substantial prejudice is that he was "confounded in presenting defenses" because he wished to testify in the homicide case but assert his privilege against self-incrimination with respect to the solicitation case. *See Delaney*, 370 Or at 571 (one theory of prejudice that can justify severing charges is a defendant's desire to assert their privilege against self-incrimination with respect to one crime but not the other). To prevail on that theory of prejudice, defendant must make "'a convincing showing that he has both important testimony to give concerning one count and [a] strong need to refrain from testifying on the other.'" *Id.* at 571 n 12 (quoting *United States v. Armstrong*, 621 F2d 951, 954 (9th Cir 1980)).

"We limit our review to the state of the record at the time of the court's ruling on the motion to sever." *Brown*, 326 Or App at 50-51 (internal quotation marks omitted). Here, at the time of defendant's first motion to sever, his argument on that theory reduced to a general statement that "where a defendant wishes to testify as to one charge, but not to another, severance is proper." And when defendant renewed his motion to sever at trial, he simply argued that "it would be in [defendant's] best interests to testify in the homicide, but not his best interest to testify in [the] solicitation case." Those general statements do not establish a "convincing showing" that defendant had important testimony to give in the homicide case and a strong need to refrain from testifying in the solicitation case. *See Baker v. United States*, 401 F2d 958, 977 (DC Cir 1968) ("[I]t is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of

prejudice is genuine and to enable it intelligently to weigh the considerations of [judicial economy] against the defendant's interest in having a free choice with respect to testifying."). Nor do defendant's statements establish a case-specific theory demonstrating that consolidation substantially prejudiced defendant. *See State v. Tidwell*, 259 Or App 152, 155, 313 P3d 345 (2013), *rev den*, 355 Or 142 (2014) ("General arguments of prejudice that could be made in any case in which charges are joined are not sufficient to demonstrate substantial prejudice when the defendant fails to relate those arguments to the specific facts of the defendant's case.").

Accordingly, the trial court correctly concluded that defendant did not suffer substantial prejudice as a result of consolidation, and thus the trial court did not err in denying his motion to sever.[5]

### EVIDENCE OF HWANG'S MALINGERING

In the solicitation case, the state alleged that defendant attempted to hire Hwang to kill defendant's two brothers and admitted to Hwang that he had killed his mother and attempted to kill his brother. As part of a plea agreement in his own criminal case, Hwang agreed to testify at defendant's trial. Defendant sought to impeach Hwang by offering evidence that, according to a fitness-to-proceed evaluation conducted on Hwang by a doctor, Hwang "was likely feigning or exaggerating symptoms" (malingering) "possibly to avoid his legal charges."

The state moved *in limine* to exclude that evidence, arguing, among other things, that OEC 404 prohibits evidence that Hwang may have fabricated symptoms because that evidence is impermissible character evidence. *See* OEC 404(3) ("Evidence of other crimes, wrongs or acts is

---

[5] Defendant also argues that "[e]ven if the trial court denies the motion for severance, it retains the authority under ORS 132.560(3) to 'provide whatever other relief justice requires,'" and thus the trial court abused its discretion in denying defendant's request to limit cross-examination of his testimony to just the homicide case. Under that statute, however, the trial court must first find that defendant is substantially prejudiced before providing relief, and as explained above, the trial court concluded that defendant was not substantially prejudiced, and that conclusion was not error. *See id.* ("If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires.").

not admissible to prove the character of a person in order to show that the person acted in conformity therewith."). And the state argued that, although other-acts evidence may be admitted for a non-character purpose, such as proof of motive or plan, the evidence does not fall under any of those purposes. OEC 404(3) (listing non-character purposes).

In response, defendant argued that he was offering evidence of Hwang's malingering as part of Hwang's "true plan" to avoid or minimize his exposure to criminal liability. *See State v. Turnidge (S059155)*, 359 Or 364, 439-40, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017) (describing "true plan" evidence as "proof of part of the planning process (even if it is a bad act itself) [that] establishes one or several preliminary steps that culminate in the commission of a charged crime"). In defendant's view, Hwang's malingering and his cooperation with the state in defendant's solicitation case—cooperation that defendant alleged was based on fabrication—were "part of his true plan to avoid standing trial or avoid[ ] a lengthy prison sentence."

The trial court granted the state's motion *in limine*. In doing so, it rejected defendant's argument that Hwang's malingering was admissible as "true plan" evidence, concluding that malingering and offering to testify in the solicitation case are "not part of the same plan" and are "completely different methods of going about" minimizing his legal exposure.

We conclude that the trial court correctly excluded evidence of Hwang's malingering because it is not "true plan" evidence but rather is impermissible character evidence under OEC 404(3).[6]

In determining whether the trial court erred in excluding evidence under OEC 404(3), we review for errors of law. *State v. Warren*, 291 Or App 496, 510, 422 P3d 282, *rev den*, 363 Or 744 (2018). For other acts evidence to be relevant and admissible as part of a "true plan," the evidence must show that the individual "in fact and in mind formed

---

[6] Because the other-acts evidence of Hwang does not concern other acts of defendant, OEC 404(4) does not apply. OEC 404(4) (with exceptions, "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant").

a plan[,] including the charged and uncharged crimes as stages in the plan's execution." *Turnidge*, 359 Or at 439 (internal quotation marks omitted). Put another way, the evidence must be of a preparatory step or stage in the execution of a larger plan.

Here, the trial court reasoned, and we agree, that Hwang's possible malingering and his cooperation with the state were not reasonably understood as stages in a larger plan; rather, those two acts were separate, entirely unrelated actions that he may have taken to achieve his goal of minimizing his legal exposure. More specifically, Hwang's possible malingering was not a preliminary step in his plan to cooperate with the state, nor is there any evidence suggesting that being a state's witness in defendant's case and malingering in his own were both necessary to achieve his purported objective of reducing his legal exposure. To the contrary, malingering arguably could have undermined Hwang's attempt to cooperate with the state if the state believed that Hwang was not competent to stand trial and thus not competent to testify in defendant's solicitation case. Thus, this is not a case where Hwang's prior act was admissible as "true plan" evidence. *Cf. id.* at 440-41 (defendant's bomb threat was a preparatory step in the commission of a later bank bombing and was thus admissible as "true plan" evidence). The trial court did not err in excluding that evidence.

## COMPENSATORY FINES

The state asked the trial court to impose compensatory fines, arguing that defendant has financial resources and has "shown very clear willingness to solicit and pay somebody to inflict harm upon his family members." As to economic damages, the state argued that defendant's brother, A, incurred significant medical bills and that their mother's house and items in the house were damaged during the murder and attempted murder. The state asked that the maximum amount, $500,000, be imposed on Count 1 (second-degree murder) "given the obvious economic damages to [defendant's mother's] estate's assets," and that the maximum amount "or something close to it," $375,000, be imposed on Count 2 (attempted first-degree murder).

Defendant argued that those amounts would be "excessive." The trial court imposed a $400,000 compensatory fine on Count 1 and a $375,000 compensatory fine on Count 2.

On appeal, defendant assigns error to the fines. He makes two arguments, both of which he acknowledges are unpreserved, but he asks that we exercise our discretion to correct them as, in his view, they are plain error. We begin with defendant's first argument that the trial court plainly erred in imposing a compensatory fine on Count 1 in favor of his mother's estate because his mother's estate was not a "qualifying victim," either legally or factually based on the evidence in the record. *See State v. Moreno-Hernandez*, 365 Or 175, 181-83, 442 P3d 1092 (2019) (under ORS 137.101(1), a trial court may designate a fine as compensatory when the crime resulted in injury; there was a qualifying victim who has suffered economic damages; and the damages are recoverable against the defendant in a civil action). Under ORS 137.103(4)(a), (e), and (f) the term "victim" for the purposes of compensatory fines includes the estate of a decedent against whom the defendant committed the crime if the court determines that the estate suffered economic damages as a result of the crime. "Economic damages," in turn, has the meaning given in ORS 31.705. ORS 137.103(2). Under that statute, "'[e]conomic damages' means objectively verifiable monetary losses including but not limited to *** recurring loss to an estate[.]" ORS 31.705(2)(a).

In defendant's view, under that statutory scheme an estate can be a qualifying victim *only* if the estate suffered a recurring loss. That interpretation, however, is contrary to the plain text of ORS 31.705(2)(a), which defines economic damages as "objectively verifiable monetary losses *including but not limited to *** recurring loss to an estate*[.]" (Emphasis added.). The list of losses in that statute, then, is nonexhaustive. Thus, whether the economic damage to the estate meets the definition of an "objectively verifiable monetary loss[]" such that the estate is a "qualifying victim," is, at minimum, not obvious, and any error here is not plain. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (an error is plain if it is (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record

without requiring the court to choose among competing inferences).

Defendant's related fact-based argument—that the record does not establish that his mother's estate suffered damage because defendant has a 50 percent ownership interest in the house and, in defendant's view, the record failed to establish whether damage to the house resulted in economic loss to his interest versus to the estate's interest—fares no better. The evidence in the record showed that the home and items in the home suffered damage as a result of the murder and attempted murder. That record permits an inference that, as the trial court concluded, defendant's mother's estate suffered economic damages. To be sure, defendant offers a competing inference—that only his interest in the home suffered economic damages and his mother's interest did not. But at most, that competing inference simply demonstrates that any error in the trial court's conclusion is not apparent on the record because we would have to choose between competing inferences. The error is therefore not plain.

Second, defendant argues that the trial court plainly erred because it imposed the fines "without complying with the statutory requirements." ORS 161.625(1) permits a trial court to impose a fine as a penalty and sets the maximum amounts allowed for various felonies. Under ORS 137.101(1), when the trial court imposes a fine as a penalty under ORS 161.625(1), the court may designate any portion of that fine as a compensatory fine to be paid to an injured victim. In defendant's view, the court should have imposed a punitive fine under ORS 161.625(1) and then assigned a portion or all of it as a compensatory fine, and its failure to do so constituted plain error. *See Moreno-Hernandez*, 365 Or at 181 ("ORS 137.101(1) envisions a two-step process for the imposition of compensatory fines. First, the court imposes a fine as a punishment for a crime, up to the maximum set by the applicable statute that authorizes the fine. *** The second step is the designation of some or all of that fine as a 'compensatory' fine payable to a victim, as permitted by ORS 137.101(1).").

We agree with defendant that the trial court's failure to first impose the fines under ORS 161.625 was plain

error. *See State v. Barkley*, 108 Or App 756, 761, 817 P2d 1328 (1991), *aff'd in part on other grounds*, 315 Or 420, 846 P2d 390, *cert den*, 510 US 837 (1993) ("A court must first impose a fine 'as penalty' before it may order a defendant to pay any portion of that fine to the clerk of the court in the form of a 'compensatory fine.'" (Internal citation omitted.)); *State v. Moore*, 239 Or App 30, 34, 243 P3d 151 (2010) ("ORS 137.101(1) does not itself authorize a court to impose a fine[.]").

Having determined that the trial court plainly erred, we must determine whether to exercise our discretion to correct the error. *State v. Gray*, 261 Or App 121, 130-31, 322 P3d 1094 (2014). In making that determination, we consider "the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). Additionally, when evaluating whether to correct a plain error in sentencing, we consider, among other things, "the interests of the judicial system in avoiding unnecessary, repetitive sentencing proceedings." *State v. Smith (A133917)*, 223 Or App 85, 89, 195 P3d 435, *rev den*, 345 Or 503 (2008).

Here, that interest weighs against our exercise of discretion. That is because the trial court would likely impose the same fines on remand. During the sentencing hearing, the trial court considered the maximum amounts allowable under ORS 161.625 and the evidence in the record before imposing the compensatory fines, and its only error was procedural in nature. Thus, on remand, the trial court would likely impose the same fines simply by first imposing them under ORS 161.625 and then designating them as compensatory fines under ORS 137.101. Under those circumstances, "remand for resentencing would be gratuitous, and declining to review such errors does not prejudice defendant." *State v. Garlitz*, 287 Or App 372, 380, 404 P3d 1090 (2017) (internal quotation marks, brackets, and citation omitted).

An additional factor weighing against exercising our discretion is the "interest in requiring preservation of

error." *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007). Under that factor, we consider whether, had defendant raised the issue below, the trial court could have easily fixed the error. *Id.* at 523 n 5. Here, the trial court had a lawful basis to impose the fines under ORS 161.625, and the error consisted only of the court's failure to follow all of the required procedural steps. Had defendant alerted the trial court to that error, the trial court could have easily followed the correct procedure. *See id.* (where court had a lawful basis for imposing the sentence that it imposed but plainly erred in failing to follow all of the procedural steps, that circumstance weighed against exercise of discretion to correct the error).

Thus, the interests of judicial efficiency and the purposes served by preservation of error, as well as the lack of prejudice to defendant, lead us to decline to exercise our discretion to correct the trial court's error.

Affirmed.